Strafford
No. 94-237

THE STATE OF NEW HAMPSHIRE

v.

DONALD T. KOEHLER

November 28, 1995

*Jeffrey R. Howard,* attorney general (*John C. Kissinger, Jr.,* assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant, Donald T. Koehler, was convicted after a jury trial in Superior Court (*Dickson,* J.) of three counts of criminal liability for the conduct of another. *See* RSA 626:8 (1986); RSA 638:1 (1986). On appeal, he argues that the trial court erred in admitting evidence of a prior bad act under New Hampshire Rule of Evidence 404(b). We affirm.

The defendant met Bruce Young, Sr., in November 1991. Young, then an alcoholic, loaned the defendant approximately $26,000 between November 1991 and January 1993. Young banked at Suncook Bank, which became Bank of New Hampshire in early 1992. Bank of New Hampshire sent Young an envelope containing new checks, which he left unopened on his kitchen table where he kept his files. Young continued to use his Suncook Bank checks, which he recorded in his checkbook register as they were written. He kept his checkbook in his pocket during the day and next to his bed at night.

On December 10, 1992, the defendant stopped at Young's home with David Card. Card worked for the defendant, who owed him

approximately $2,100 in back wages. The defendant told Card that Young had adopted him as a second son, and that there was not much Young would not do for him. Card waited in the defendant's truck while the defendant went inside Young's home. The defendant told Young that he needed a check for $290, explaining that Card was an attorney to whom he owed a fee. Card was not an attorney. Young gave the defendant a signed check for $290. The defendant wrote Card's name on the Suncook Bank check and gave it to Card.

Shortly thereafter, Card told the defendant that he wanted to be paid for his back wages. On December 19, 1992, the defendant gave Card a $2,300 Bank of New Hampshire check bearing Young's signature, and asked him to write his name on the payee line, cash the check, keep $1,000, and return the remainder. The defendant told Card that he had explained to Young that he owed Card money and that Young had given him the check. In December 1992 and January 1993, the defendant gave Card two more of Young's Bank of New Hampshire checks to cash for similar sums and with similar instructions and explanations.

In January 1993, Young discovered that his checking account balance was less than he expected. He learned that his Bank of New Hampshire checks numbered 137, 138, and 139 had been cashed. These three checks were made payable to and endorsed by David Card. Young testified that he had neither signed these checks nor given them to the defendant, explaining that he was still using his Suncook Bank checks at the time and had not yet even opened the envelope containing the Bank of New Hampshire checks. Card was subsequently arrested on charges of forgery, but the charges were dropped after he explained his role in the transactions to the police. The police then arrested the defendant, who stated that Young gave him the checks from his checkbook and signed them, and that he then gave the checks to Card. The FBI analyzed the checks but could not determine who signed them or match any fingerprints on them to the defendant, Young, or Card. Young testified that when confronted, the defendant denied taking the checks and suggested that Card may have stolen them. Young continued to loan the defendant money after the checks were stolen and forged.

Prior to trial, the defendant moved *in limine* to prevent the State from introducing evidence of the $290 check that Young signed and gave to the defendant for Card on December 10, 1992. The court found that the State's offer of proof satisfied the three-part test for admissibility under Rule 404(b), and ruled that the evidence would be admitted at trial.

On appeal, the defendant argues that the trial court erred in admitting evidence of the $290 check. We will overturn the trial

court's decision only if the defendant can show that the court abused its discretion; *i.e.*, that the decision was clearly untenable or unreasonable to the prejudice of his case. *State v. Bassett*, 139 N.H. 493, 496, 659 A.2d 891, 894 (1995).

Evidence is admissible under Rule 404(b) if it is relevant for a purpose other than showing the defendant's character or disposition, there is clear proof that the defendant committed the act, and the prejudice to the defendant does not substantially outweigh the probative value of the evidence. *Id.* According to the State's offer of proof, the State sought to offer the

> $290 check which was actually . . . signed by Bruce Young, the owner of the checks in question in this case, [and made payable] to David Card, the person whose conduct the defendant is alleged to be liable for in this case. The defendant obtained this $290 check on December 10, 1992, by telling Bruce Young that David Card was his attorney and he needed $290 for court costs. This was, of course, not true, and just nine days later the defendant was found to be in possession of one of three forged stolen checks, checks that were stolen from Bruce Young, checks which bore the forged signature of Bruce Young. The intent to defraud another, the purpose to defraud another will be in issue in this case. Whether contested or not by the defense, it's an element that the State must prove beyond a reasonable doubt. This transaction with the $290 check shows a clear intent to defraud Bruce Young by indicating – by demonstrating that the defendant lied to Bruce Young to get money out of him. It also suggests a plan. The defendant, if in fact he was the one that signed the forged instruments, would have had to have a signature of Bruce Young . . . in order to copy [the] name[]. So not only does it go to purpose to defraud, the evidence also goes to plan, preparation. The evidence is highly probative on not only the purpose to defraud but also the plan and preparation, and it's under 404(b) that the State would offer evidence of the $290 check, not as a signature crime or modus operandi, but on the elements of purposefulness, preparation and plan.

The trial court found that the State's offer of proof satisfied the three-part test for admissibility under Rule 404(b) and admitted evidence of the transaction for the purposes of showing the defendant's intent and plan. The defendant challenges the court's ruling under the relevance and prejudice prongs of the test.

We address the relevance challenge first. To be relevant as evidence of the defendant's plan, "other bad acts must be constituent parts of some overall scheme." *State v. Kirsch*, 139 N.H. 647, 655, 662 A.2d 937, 943 (1995). The charged and uncharged acts must be stages in the plan's execution. *See State v. Whittaker*, 138 N.H. 524, 528, 642 A.2d 936, 939 (1994).

The trial court properly ruled that evidence of the $290 check was relevant to show the defendant's plan, based on the State's offer of proof, which "state[d] the specific purpose for which the evidence [was] offered and . . . articulate[d] the precise chain of reasoning by which the proffered evidence . . . tend[ed] to prove or disprove an issue actually in dispute, without relying upon forbidden inferences of predisposition, character, or propensity." *State v. McGlew*, 139 N.H. 505, 510, 658 A.2d 1191, 1195 (1995). The State's offer of proof noted the temporal proximity of the $290 check, which was signed by Young and given to the defendant on December 10, 1992, and the date the defendant gave Card the first forged check written on Young's account, which was December 19, 1992. The State also argued that the $290 check facilitated the three subsequent forgeries by providing the defendant with Young's signature on a check made out to Card, the person for whose conduct the defendant was charged with liability. We conclude that the trial court, in adopting the State's theory of admissibility, *see McGlew*, 139 N.H. at 510, 658 A.2d at 1195, did not abuse its discretion in finding the prior bad act to be a constituent part of the defendant's plan, and therefore relevant. We also conclude that the trial court did not abuse its discretion in finding the prior bad act relevant to show the defendant's intent.

The defendant next challenges the trial court's implicit finding that the prejudice to the defendant did not substantially outweigh the probative value of the evidence of the $290 check. "The trial court is accorded considerable deference in its determination of whether the prejudice substantially outweighs the probative value." *State v. Dushame*, 136 N.H. 309, 317, 616 A.2d 469, 473 (1992) (quotation omitted). We have explained that

> [e]vidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case.

*McGlew*, 139 N.H. at 510, 658 A.2d at 1195 (quotation and emphasis omitted). Here, the nature of the defendant's prior bad act is not especially inflammatory or likely to have an emotional impact on the jury. *Compare Dushame*, 136 N.H. at 317, 616 A.2d at 473 (prejudice of evidence of defendant's prior DWI record not particularly overwhelming) *with State v. Carter*, 140 N.H. 1, 5–6, 662 A.2d 289, 291 (1995) (odious and provocative nature of defendant's prior sexual mistreatment of his stepdaughter unfairly prejudicial). The probative value of the evidence is considerable, as it helps prove the defendant's plan to defraud Young. *See Dushame*, 136 N.H. at 317, 616 A.2d at 473. Accordingly, we find no abuse of discretion in the court's decision to admit the evidence.

*Affirmed.*

BRODERICK, J., did not sit; HORTON, J., concurred in the result only; the others concurred.