Strafford
No. 95-402

THE STATE OF NEW HAMPSHIRE

v.

RICHARD CASTINE

August 15, 1996

*Jeffrey R. Howard*, attorney general (*Ann M. Rice*, assistant attorney general, on the brief and orally), for the State.

*Joachim Barth*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. The defendant, Richard Castine, was convicted of one count each of felonious sexual assault, RSA 632-A:3 (1986), and aggravated felonious sexual assault on a child under thirteen years of age, RSA 632-A:2 (Supp. 1995). On appeal, he argues that the Superior Court (*Mohl*, J.) erred in admitting: (1) testimony of prior uncharged assaults on the victim, *see* N.H. R. EV. 404(b); and (2) three pornographic magazines and portions of a sexually explicit videotape, *see* N.H. R. EV. 403. The defendant also argues that the trial court erred in denying his motion to dismiss the felonious sexual assault charge based on sufficiency of the evidence. We affirm.

The victim moved into the home of Joseph and Winifred Brown in Burlington, Massachusetts, when she was four or five years old. The defendant, who was married to the Browns' daughter, occupied an apartment located in the basement of the residence. The incidents leading to the defendant's convictions occurred during the summer of either 1985 or 1986, when the victim was nine or ten years old and was vacationing with the family at Ayers Lake Campground in Barrington, New Hampshire. The victim testified that while she and the defendant were alone at the campground, the defendant had her fondle his penis and perform an act of fellatio. The victim did not report the assaults until 1992, after she had moved out of the Browns' home and was living in Rochester, Vermont. The defendant was subsequently convicted for the assaults in New Hampshire, and this appeal followed.

## I. Prior Bad Act Evidence

The defendant first argues that the trial court improperly admitted testimony of prior sexual assaults on the victim by the defendant in violation of New Hampshire Rule of Evidence 404(b). At trial, the victim was allowed to testify that during the year preceding the incidents at Ayers Lake, she was sexually assaulted by the defendant.

Rule 404(b) provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The purposes and goals of this rule are well established, *see, e.g., State v. McGlew*, 139 N.H. 505, 509, 658 A.2d 1191, 1195 (1995), and will not be repeated here. We review the trial court's exercise of discretion to determine whether its "ruling was clearly untenable or unreasonable to the prejudice of the [defendant's] case." *State v. Whittaker*, 138 N.H. 524, 527, 642 A.2d 936, 938 (1994) (quotation omitted).

The standard of admissibility is familiar:

> Evidence is admissible under Rule 404(b) if it is relevant for a purpose other than showing the defendant's character or disposition, there is clear proof that the defendant committed the act, and the prejudice to the defendant does not substantially outweigh the probative value of the evidence.

*State v. Koehler*, 140 N.H. 469, 471, 669 A.2d 788, 790 (1995).

The defendant challenges the trial court's ruling under both the relevance and prejudice prongs of the test set forth above. We begin with our relevance analysis, noting that "to be relevant, prior bad acts must be in some significant way connected to material events constituting the crime charged." *McGlew*, 139 N.H. at 507, 658 A.2d at 1193. We consider only what was presented at the pretrial hearing on the admissibility of this testimony in reviewing its relevance. *See State v. Bassett*, 139 N.H. 493, 497, 659 A.2d 891, 895 (1995).

The trial court ruled that the challenged testimony was admissible under both the "plan" and "preparation" exceptions to Rule 404(b). The court found that "[t]he victim's testimony demonstrated that the defendant began to prepare her as a sexual victim . . . [in] a concerted and detailed effort to groom [her] . . . for what turned out to be years of sexual predation."

The victim testified that when she was eight or nine years old, the defendant began showing her pornographic magazines depicting various sexual acts. Often, he would point out to her specific photographs, in particular those depicting oral sex. While at first the defendant merely displayed certain photographs, over time he began to take her hand and have her fondle his penis while showing her the magazines. Eventually, the defendant also began showing the victim pornographic videotapes. The fondling then progressed

into demands for fellatio. The victim testified that the defendant used the pornographic materials as a "how-to-guide" and that the frequency of these assaults gradually escalated to approximately once per week. The court found that this testimony was relevant to show that the defendant was "the person who[] committed the charged acts because these acts were but a part of a much larger and very calculated plan by the defendant to subject this particular victim to years of sexual exploitation," *see generally* E. IMWINKELRIED, UNCHARGED MISCONDUCT EVIDENCE § 3:21 (1995) (plan is relevant to show defendant was perpetrator), but was inadmissible "to show he is the kind of person who would commit the charged crimes." (Emphasis omitted.) *See McGlew*, 139 N.H. at 510, 658 A.2d at 1195 (trial court must articulate for the record the theory upon which evidence is admitted "without invoking propensity").

We have recently stated that

> [t]he distinguishing characteristic of a plan is the existence of a true plan in the defendant's mind which includes the charged and uncharged crimes as stages in the plan's execution. Viewed objectively, the other bad acts must clearly tend to show that the defendant had a definite prior design or system which included the doing of the act charged as part of its consummation. . . . [T]he prior conduct and the charged act [must be] mutually dependent.

*State v. Melcher*, 140 N.H. 823, 828, 678 A.2d 146, 149 (1996) (quotations and citations omitted).

While a series of sexual acts with the same victim may "resemble[] a design in retrospect[,] . . . [t]here are many instances in which isolated, discrete sexual assaults may have occurred on the same victim without the defendant's having a plan in mind." *Id.* at 828, 678 A.2d at 149. Thus in *Melcher*, we found that the prior uncharged conduct of the defendant was comprised of a series of unrelated and disparate acts that were not "mutually dependant" and therefore did not constitute a plan.

We do not reach the same conclusion here, however, because unlike *Melcher*, the challenged testimony in this case described a series of interdependent acts which, along with the charged act, were part of a calculated design by the defendant to "groom" the victim. *Cf. id.* at 829, 678 A.2d at 150 (uncharged acts failed to show a plan because the charged act clearly "did not hinge" on the occurrence of the uncharged acts). Simply put, the acts were cognizable stages in the execution of a readily discernable plan.

Further, the calculated progression of each stage of abuse insured that the existence of a plan could be objectively determined by looking at the prior acts themselves, thereby foreclosing reliance on the prohibited inference that because the defendant was predisposed to abusing the victim, he must have had a plan. *Cf. id.* at 829, 678 A.2d at 150 (the link between the prior conduct and the charged act must be divorced from any reliance on the defendant's character).

■ Under the same analysis, the evidence was admissible to show the defendant's "preparation" to commit the charged crimes. *See* N.H. R. EV. 404(b); IMWINKELRIED, *supra* § 3:25. Specifically, the evidence, objectively viewed, was admissible to demonstrate that the defendant's gradually escalating abuse led to the fulfillment of his plan to commit the charged offenses by preparing the victim for the later assaults. We therefore agree with the trial court that the testimony was probative of preparation.

The defendant argues that even if the proffered evidence was relevant, its prejudicial nature substantially outweighed its probative value. We have stated that

> evidence is unfairly prejudicial if its primary purpose or effect is to appeal to a jury's sympathies, arouse its sense of horror, provoke its instinct to punish, or trigger other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case.

*Koehler,* 140 N.H. at 472, 669 A.2d at 791 (quotation and brackets omitted). As the trial court noted in its order, "there is, to be sure, prejudice to the defendant by admission of this evidence." *See State v. Marti,* 140 N.H. 692, 695, 672 A.2d 709, 711 (1996) (evidence of prior sexual assault is, by its nature, the type of evidence that may lead a jury to render its decision on an improper basis).

■ On appeal, we accord the trial court "considerable deference in its determination of whether the prejudice substantially outweighs the probative value." *State v. Tarsitano,* 134 N.H. 730, 735–36, 599 A.2d 474, 477 (1991) (quotation omitted).

■ This evidence was relevant to show the existence of a plan directed to completion of the crime in question, *see Whittaker,* 138 N.H. at 528, 642 A.2d at 939, and therefore was highly probative of whether the defendant in fact committed the charged acts. *See* IMWINKELRIED, *supra* § 3:21; *cf. Tarsitano,* 134 N.H. at 735, 599 A.2d at 477 ("[w]hether an issue is in dispute is particularly

pertinent to a determination of the balance between the probative value of evidence and its prejudicial effect").

 A review of the record reveals that the prejudicial aspects of the victim's testimony did not *substantially* outweigh its probative value. *See Tarsitano*, 134 N.H. at 735, 599 A.2d at 477. Unlike *State v. Marti*, where the victim was allowed to testify about "hundreds of prior sexual assaults perpetrated by the defendant," *Marti*, 140 N.H. at 695, 672 A.2d at 711, testimony here was limited to acts occurring in the months leading up to the charged assaults. While the victim testified during the motion hearing that the assaults occurred with a frequency of approximately once per week, at trial the frequency of the assaults was not mentioned. *Cf. id.* at 694, 672 A.2d at 710 (victim testified that the assaults occurred two or three times per week over an eleven-year period). Further, the victim's testimony about the prior assaults was not extensive or repetitious and was properly limited to only those acts that were a part of the progressive steps in the defendant's plan.

Therefore, because we find that the victim's testimony was both relevant and not unduly prejudicial, we find no abuse of discretion on the part of the trial court.

## II. Admissibility of Pornographic Materials

The defendant next argues that the trial court erred in allowing the State to introduce into evidence three pornographic magazines and portions of a pornographic videotape. The defendant does not challenge the material's relevance, but rather asserts that the trial court failed to properly balance the probative value of this evidence against its prejudicial nature. *See* N.H. R. EV. 403. We will not disturb the trial court's ruling absent an abuse of discretion. *See Marti*, 140 N.H. at 694, 672 A.2d at 711.

New Hampshire Rule of Evidence 403 states that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The defendant argues (1) that the materials were of minimal probative value given that the victim testified about being shown pornography, *see McGlew*, 139 N.H. at 511, 658 A.2d at 1196 (when balancing probative value and prejudice, the extent to which issue is established by other evidence is meaningful), and (2) that the graphic nature of the materials rendered them unfairly prejudicial.

We do not find that the materials were of limited probative value. The display of pornography was an integral part of the defendant's plan to "groom" the victim to submit to his advances. In fact, the

charged acts themselves were preceded by the defendant exposing the victim to a pornographic magazine. After a review of the record, we agree with the State that the victim's general testimony about the acts portrayed "simply did not convey the graphic nature of the films and magazines," and therefore, the victim's testimony alone did not obliterate the probity of this physical evidence.

Although these materials did present a risk of unfair prejudice given their highly graphic nature and explicit depiction of a panoply of sexual acts, cf. McGlew, 139 N.H. at 510, 658 A.2d at 1195, we find no error as the incremental prejudice to the defendant was minimal. The victim had already testified to the disturbing fact that beginning at age eight or nine the defendant began exposing her to graphic pornography. Therefore, because the probative value of this evidence was not substantially outweighed by its potentially prejudicial nature, cf. State v. Seymour, 140 N.H. 736, 743, 673 A.2d 786, 793 (1996) (gruesome color photographs and videotape of murder crime scene were prejudicial, but nonetheless probative value was not substantially outweighed by the prejudice), we cannot say that the trial court abused its discretion in admitting this evidence.

### III. Sufficiency of the Evidence

Finally, the defendant asserts that the State failed to prove, beyond a reasonable doubt, that the felonious sexual assault charge occurred after January 1, 1986. The defendant, at the close of the State's case, moved to dismiss this charge because there was no evidence that the act comprising the felonious sexual assault charge caused serious bodily injury to the victim, an element required by the statute in effect prior to January 1, 1986. See RSA 632-A:3 (amended 1985). Although the State conceded that it had not presented any evidence of bodily injury, the trial court denied the defendant's motion, and instead instructed the jury that "if you are unable to conclude beyond a reasonable doubt that the touching of the defendant's penis occurred in Barrington after January 1st, 1986, then you must find the defendant not guilty."

In determining whether there was sufficient evidence presented at trial to support the defendant's conviction for felonious sexual assault, we must determine whether any rational trier of fact, while viewing the evidence in a light most favorable to the State, could have found beyond a reasonable doubt that the defendant committed the act of felonious sexual assault after January 1, 1986. See State v. LaCasse, 129 N.H. 651, 653, 531 A.2d 327, 329 (1987).

The victim's testimony regarding the date of the assault was confusing at times and indicated that the charged events could have happened during either the summer of 1985 or 1986. The victim did

testify affirmatively that she believed that the charged acts occurred in 1986. This testimony was supported by the defendant's ex-wife's testimony that during the summer of 1986, the victim was left alone at the campground with the defendant. The victim's testimony became increasingly confused, however, in response to the prosecutor's own miscalculations regarding the victim's age and his leading questions.

We recognize that "the essence of a jury's function is to determine the weight and credence to be given the evidence at trial," *id.* (quotation and brackets omitted), and we "will defer to the jury's determination unless no reasonable person could have come to the same conclusion after weighing the conflicting evidence." *Id.* We cannot conclude that, viewing the evidence in the light most favorable to the State, it was insufficient as a matter of law to support the felonious sexual assault conviction.

*Affirmed.*

THAYER and HORTON, JJ., concur in the result only; the others concurred.