Strafford
No. 2001-341

### THE STATE OF NEW HAMPSHIRE

v.

### DAVID MICHAUD

Argued: September 10, 2003
Opinion Issued: December 22, 2003

*Peter W. Heed*, attorney general (*Susan P. McGinnis*, attorney, on the brief and orally), for the State.

*Christopher M. Johnson,* chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, David Michaud, was convicted by a jury of one count of witness tampering involving Frank Gagnon, *see* RSA 641:5 (1996), and acquitted of a second count of witness tampering involving Virginia Doherty, *see id.* The defendant appeals his conviction, arguing that the Trial Court (*Mohl,* J.) erroneously denied his motion to sever the charges. We affirm.

On June 6, 1996, a fire destroyed the home that the defendant and his wife owned and shared with their children. Two weeks later the police arrested the defendant, charging him with arson. The witness tampering charge involving Virginia Doherty concerns a statement Doherty made to the police in July 1996 that approximately a week before the fire, the defendant "had made the comment that if he could do it without hurting his children . . . he'd burn the house down." In late 1996, while incarcerated and awaiting trial on the arson charge, the defendant allegedly wrote Doherty a letter, delivered by his sister, Joanne Ainsworth, asking her to change her statement. In July 1997, at a hearing on the defendant's motion to dismiss the arson charge, Doherty testified, recanting her statement.

The defendant met Frank Gagnon shortly after June 21, 1997, while the two were assigned to the same unit at the house of corrections. The witness tampering charge involving Gagnon arose from an offer of $25,000 and a trailer that the defendant made to Gagnon if he agreed to confess to burglarizing the Michaud residence and accidentally starting the fire with a cigarette. According to their plan, Gagnon would request a transfer to a different unit to hide the fact that he knew the defendant, contact the media to take responsibility for the crime, confess to the police and admit to several other crimes with details overheard in prison to obscure the scheme. The defendant and Gagnon repeatedly reviewed the facts of the arson, including the specific origin points of the fire and the layout of the Michaud house. Gagnon confessed to the arson during an interview with a newspaper on August 19, 1997, and to the police on August 20, 1997. On August 22, 1997, Gagnon was transferred to a new unit.

Gagnon later concluded that the defendant would not follow through with the payment or the trailer. During an interview with investigators, on October 10, 1997, Gagnon revealed the "scam" that he and the defendant had planned and carried out. Then, in November 1997, Doherty recanted her recantation and informed the police that the defendant had made the arson threat. The defendant was indicted on both charges. Prior to trial,

the defendant moved to sever the Doherty charge from the Gagnon charge. The trial court denied the motion.

The defendant appeals his conviction and argues that this case must be decided under the standards for severance recently set out in *State v. Ramos*, 149 N.H. 118 (2003). In light of our holding in *State v. Tierney*, 150 N.H. 339 (2003), we agree with the defendant that *Ramos* applies.

■ The defendant first argues that the charge involving Doherty and the charge involving Gagnon were unrelated and should have been severed. Under the *Ramos* standards, a defendant has an absolute right to sever unrelated charges. *Ramos*, 149 N.H. at 128. Unrelated offenses are, obviously, those offenses that are not related. Related offenses, on the other hand, are offenses based upon the same conduct, upon a single criminal episode, or upon a common plan. *Id.* In this case, the State argues that the two witness tampering charges were based upon a common plan. *Cf. State v. Whitney*, 125 N.H. 636, 639 (1984) (upholding trial court decision to consolidate witness tampering charges that were based upon a common motive and plan).

We have discussed the definition of a common plan for the purposes of New Hampshire Rule of Evidence 404(b). *See State v. Melcher*, 140 N.H. 823 (1996). Both parties agree that the Rule 404(b) standard should apply to the definition of "common plan" for purposes of the relatedness test laid out in *Ramos*. While we have not held that Rule 404(b) applies to the definition of a "common plan" under *Ramos*, we assume, without deciding, that the Rule 404(b) standard applies.

■ The distinguishing characteristic of a plan under Rule 404(b) is the existence of a true plan in the defendant's mind which includes the charged crimes as stages in the plan's execution. Viewed objectively, the defendant's actions must show that the defendant had a definite prior design which included doing the charged acts as part of its consummation. That a sequence of acts resembles a design when examined in retrospect is not enough; the prior conduct must be intertwined with what follows, such that the charged acts are mutually dependent. *See Melcher*, 140 N.H. at 828.

■ The defendant argues that the witness tampering offenses were not part of a common plan because he simply took advantage of opportunities as they arose. We found this argument persuasive in *Melcher*, 140 N.H. at 829, in which the defendant committed discrete acts of uncharged sexual misconduct, because the acts were not mutually dependent. This case more closely resembles *State v. Castine*, 141 N.H. 300, 303 (1996), in which the

defendant groomed a victim for sexual abuse by an ever-increasing pattern of abuse. In *Castine*, we found that the defendant did not simply seize opportunities as they arose, but engaged in gradually escalating abuse that led to the fulfillment of his plan to commit the charged offense. *See Castine*, 141 N.H. at 303-04.

Here, the defendant did more than seize opportunities as they arose. Instead, he used each opportunity as an interrelated element of a plan to create reasonable doubt in the minds of a potential jury so as to be acquitted of the arson charge. In late 1996, the defendant allegedly induced Doherty to lie at a hearing on a motion to dismiss the arson charge, which took place in July 1997, and Doherty did in fact lie. In June and July 1997, the same time frame in which Doherty lied at the hearing on the motion to dismiss, the defendant planned with Gagnon to have Gagnon lie about setting fire to the Michaud house. In August, Gagnon did lie, before Doherty recanted her lie.

The success of the Gagnon scheme depended upon the success of the Doherty scheme. The Gagnon scheme was aimed at exonerating the defendant from the arson charge, despite the amount of circumstantial evidence of the defendant's guilt. Doherty's recantation was integral to the credibility of Gagnon's confession, which in turn hinged upon the success of the defendant's influence upon Doherty. *See Melcher*, 140 N.H. at 829. Moreover, it is not solely the defendant's motive to exonerate himself of the arson charge that ties each witness tampering charge to the other; rather, it is the mutual dependence of one upon the success of the other. As in *Castine*, the defendant's ability to succeed in the Gagnon scheme depended upon success with the Doherty scheme.

■■ Because the defendant's offenses were mutually dependent they are related as parts of a common plan. The defendant argues, however, that even if the offenses were related, they still should have been severed under *Ramos* to promote a fair determination of his guilt or innocence. In determining whether the trial court properly decided a motion to sever related charges, we consider, among other factors, whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently to each offense. *Ramos*, 149 N.H. at 128.

■ Here, the State charged the defendant with only two offenses of witness tampering. In total, the trial involved the testimony of five witnesses. Only two of the witnesses, both police officers, testified concerning both offenses. Each offense had the same elements and there was little factual overlap. Therefore, the jury could have distinguished the

evidence and applied the law intelligently to each offense. As such, the trial court's denial of the defendant's motion to sever the charges did not deny him a fair determination of his guilt or innocence.

We conclude that the witness tampering offenses were related and that the consolidation of the charges allowed for a fair determination of the defendant's guilt or innocence. As a result, the trial court properly denied the defendant's motion to sever.

*Affirmed.*

BRODERICK, J., concurred; GROFF, COFFEY and VAUGHAN, JJ., superior court justices, specially assigned under RSA 490:3, concurred.