Strafford
No. 2003-395

THE STATE OF NEW HAMPSHIRE

v.

JEREMY MCINTYRE

Argued: September 9, 2004
Opinion Issued: November 18, 2004

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, Jeremy McIntyre, was convicted by a jury in the Superior Court (*T. Nadeau*, J.) of one count of felonious sexual assault by touching the victim's breast, *see* RSA 632-A:3, III (1996) (amended 2003), and three counts of aggravated felonious sexual assault by digital penetration, cunnilingus and fellatio, *see* RSA 632-A:2, I (*l*) (1996) (amended 2003). The defendant appeals, arguing that the Superior Court (*Mohl*, J.) erroneously denied his pretrial motion to sever the felonious sexual assault charge from the aggravated felonious sexual assault charges. We affirm.

The pertinent facts follow. The female victim was eleven years old in July 2001; she turned twelve in August of that year. The victim spent time

with her best friend (D.S.) during the summer of 2001 at her best friend's home. The defendant was, at the time, the boyfriend of D.S.'s half-sister, and resided at D.S.'s family home.

In July, while the victim and defendant were alone, the defendant touched the victim's breast twice while teaching her how to play pool. When she objected after the first incident, the defendant apologized. He then touched her breast a second time, at which point she left the room. She did not report either touching. Shortly after the breast touching, the defendant placed his hand on the victim's lower leg during a car trip to the "Lee Races," and placed his hand on her upper leg while they were watching a race. Again, she did not report either touching.

One or two weeks after the defendant touched the victim's leg, she spent the night at D.S.'s family home. Late that night, the defendant entered D.S.'s room where the victim was sleeping on the floor, kissed the victim, partially disrobed her, digitally penetrated her, performed cunnilingus on her, and forced her to perform fellatio. The victim reported this incident to the police. The defendant was charged with one count of felonious sexual assault for the breast touching and three counts of aggravated felonious sexual assault for the digital penetration, cunnilingus and fellatio.

Prior to trial, the defendant moved to sever the felonious sexual assault charge from the three aggravated felonious sexual assault charges. The trial court denied the motion, finding that the acts alleged fell within the "common plan" rule for joinder. The defendant appeals, arguing that the charged offenses did not form a common plan, and hence were unrelated. We will uphold the trial court's decision not to sever the charges unless we conclude that the decision constitutes an unsustainable exercise of discretion. *State v. Ramos*, 149 N.H. 118, 120 (2003). To show that the trial court's decision is unsustainable, the defendant must demonstrate that the ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

The defendant has an absolute right to severance of unrelated offenses. *Id.* at 128. Unrelated offenses, obviously, are those that are not related. Related offenses are those offenses that are based upon the same conduct, a single criminal episode, or a common plan. *Id.* The parties agree that the felonious sexual assault charge and the aggravated felonious sexual assault charges do not fit within the first two categories. Thus, we must determine whether the offenses constitute a common plan. We have previously discussed the definition of a common plan for the purposes of New Hampshire Rule of Evidence 404(b). *See State v. Melcher*, 140 N.H. 823 (1996); *State v. Castine*, 141 N.H. 300 (1996). We now adopt the Rule 404(b) definition of "common plan" for the purposes of the relatedness test

in *Ramos*. *Cf. State v. Michaud*, 150 N.H. 359, 361 (2003) (assuming without deciding that the Rule 404(b) standard applies).

■ The distinguishing characteristic of a common plan under Rule 404(b) is the existence of a true plan in the defendant's mind which includes the charged crimes as stages in the plan's execution. *Id.* That a sequence of acts resembles a design when examined in retrospect is not enough; the prior conduct must be intertwined with what follows, such that the charged acts are mutually dependent. *Id.*

The defendant argues that this case resembles *State v. Melcher*, where we did not find evidence of a common plan. *Melcher*, 140 N.H. at 829. In *Melcher*, the defendant was charged with grabbing the victim by her hair and forcing her to kiss his penis. *Id.* at 824. The trial court admitted evidence that, over a three- to four-year period, the defendant had tickled and fondled the victim, the defendant on several occasions had fondled the victim's breasts and genitals while she was shaving her legs, and once had the victim sit naked on a couch between himself and her mother. *Id.* at 826. We found that these acts were insufficient to support a common plan because the purported goal of the plan—the act with which the defendant was charged—clearly did not hinge upon their occurrence. Instead, we found that the defendant's prior conduct merely showed that he seized opportunities to abuse the victim as they arose and that repeated sexual assault over time does not, in and of itself, demonstrate that the defendant had a common plan. *Id.* at 829.

Relying upon *Melcher*, the defendant asserts that the evidence in this case showed only that he availed himself of discrete opportunities to touch the victim. We disagree.

We hold that it is reasonable to conclude that the acts in this case were mutually dependent, because the occurrence of the final assaults hinged upon the success of the earlier incidents. *See Melcher*, 140 N.H. at 829. Had the victim reported the breast touching or leg touching incidents to anyone, the defendant would not have had the opportunity to commit the final assaults. In *Melcher*, however, the occurrence of the final assault did not depend upon the success of the prior incidents, as the victim's mother was present during one of the prior incidents, indicating that the victim's silence was not a necessary element of the plan. *Id.* at 826.

■ While mutual dependence of the charged acts is the distinguishing characteristic of a common plan, *see Michaud*, 150 N.H. at 361, we have held that a calculated progression of each stage of sexual abuse insures that the existence of a plan can be objectively determined. *Castine*, 141 N.H. at 304. Such a progression forecloses reliance upon the prohibited

inference that because the defendant was predisposed to abusing the victim, he must have had a plan. *Id.*

The victim in *Castine* testified that the defendant first started showing her pictures in pornographic magazines, and later had her fondle his penis while he showed her the pictures. The defendant then began showing the victim pornographic movies. *Id.* at 302. The victim testified that the pornographic material amounted to a "how-to guide" for an escalating series of assaults that culminated with weekly demands for fellatio. We held that the events formed a common plan, because they demonstrated a calculated design by the defendant to "groom" the victim. *Id.* at 303.

Although the facts in this case do not amount to the level of "grooming" found in *Castine*, they do illustrate a clear progression in the level of abuse, allowing a reasonable person to make an objective finding of a common plan. In the first incident, the defendant touched the victim's breast over her clothing. In the next incident, the defendant touched the victim on her bare upper and lower leg. Finally, the defendant digitally penetrated the victim, performed cunnilingus on her, and forced her to perform fellatio on him. By contrast, in *Melcher*, there was not a similar progression in the level of assaults. Furthermore, in *Melcher* the incidents were isolated, and spread over a period of three or four years, while the facts of the present case demonstrate a clear progression of events within a mere six weeks. *Melcher*, 140 N.H. at 826.

In sum, we find that this case more closely resembles *Castine* than *Melcher*. Because we conclude that a reasonable person could find that the charged offenses formed a common plan, the trial court's decision to deny the defendant's motion for severance did not constitute an unsustainable exercise of discretion.

The defendant also argues that denial of his motion to sever the offenses violated his due process rights under the State and Federal Constitutions. Because his constitutional arguments were not adequately briefed and argued, however, we decline to address them. *State v. Schultz*, 141 N.H. 101, 104 (1996).

*Affirmed.*

DUGGAN and GALWAY, JJ., concurred; BRODERICK, C.J., concurred in part and dissented in part.

BRODERICK, C.J., concurring in part and dissenting in part. I concur with the majority in adopting, for the purposes of the relatedness test in *State v. Ramos*, the definition of a "common plan" that we have previously used in the context of New Hampshire Rule of Evidence 404(b). *See State*

*v. Melcher,* 140 N.H. 823, 828-29 (1996); *State v. Michaud,* 150 N.H. 359, 361 (2003) (assuming without deciding that the Rule 404(b) standard applies); *see also State v. Ramos,* 149 N.H. 118, 128 (2003). I write separately, however, because I disagree with the trial court's finding that the charged acts constituted a "common plan." Consequently, I would normally vacate the trial court's order denying the defendant's motion to sever the charges and remand for a determination of whether the charges were related because they were based upon either "the same conduct" or "a single criminal episode." *See Ramos,* 149 N.H. at 128. Under the particular circumstances of this appeal, however, where both parties agree that the charges are based upon neither of these categories, I would reverse the defendant's convictions.

> The distinguishing characteristic of a [common] plan is the existence of a true plan in the defendant's mind which includes the charged and uncharged crimes as stages in the plan's execution. Viewed objectively, the other bad acts must clearly tend to show that the defendant had a definite prior design or system which included the doing of the act charged as a part of its consummation. That a sequence of acts resembles a design when examined in retrospect is not enough; the prior conduct must be intertwined with what follows, such that the prior conduct and the charged act are mutually dependent.
>
> ... There are many instances in which isolated, discrete sexual assaults may have occurred on the same victim without the defendant's having a plan in mind, though this prior conduct most probably would establish bad character or disposition. For prior sexual misconduct to be relevant to show that the defendant had a plan, the mutual dependence between the prior conduct and the charged act still must be divorced from any actual or implicit reliance on the defendant's character. Otherwise, the existence of a plan could be claimed indiscriminately in many cases of sexual assault and serve, inappropriately, as a ready avenue to the admission of evidence that Rule 404(b) was expressly designed to exclude.

*Melcher,* 140 N.H. at 828-29 (quotations and citations omitted).

The facts discussed by the majority include the charged felonious sexual assault, consisting of twice touching the victim's breast while teaching her to play pool. The victim's friend testified that she was in an adjoining room, but frequently entered the room with the pool table while the defendant was teaching the victim to play. The majority next refers to a trip to the

"Lee Races," when the defendant allegedly twice placed his hand on the victim's leg, while in the company of his girlfriend, child, and girlfriend's half-sister. The final incident entails the charged aggravated felonious sexual assaults, consisting of digital penetration, cunnilingus and fellatio.

Prior to trial, the defendant moved to sever the felonious sexual assault charge from the three aggravated felonious sexual assault charges. Following a hearing, the motion judge denied the defendant's request, finding "that the acts alleged fall well within the 'common plan' rule for joinder."

My review of the record reveals no indication that the motion judge knew of the defendant's alleged touching of the victim's leg at the time of his ruling. In addition, his order refers only to the charged conduct. Consequently, I fail to see how twice touching the victim's breast, without more, objectively leads to a determination that the defendant had a "true plan" or "a definite prior design or system," which included the aggravated felonious sexual assaults as a part of its consummation, and where touching the victim's breast was intertwined with the later assaults and all of the acts were mutually dependent. Even if we consider the defendant's touching of the victim's leg within the analysis, I fail to see a "common plan." *But cf. State v. Castine*, 141 N.H. 300, 302 (1996) (our review considers only what was presented at the pretrial hearing). Instead, I view the initial touching of the victim's breast by the defendant while he was teaching her to play pool as a discrete and relatively isolated sexual assault from the occurrence of the digital penetration and oral sex the following month.

In addition, I note that neither the majority nor the trial court attempt to explain or define the particular "common plan" that they believe the defendant possessed with respect to the victim. *Cf. State v. Haley*, 141 N.H. 541, 546-47 (1997) (escalating uncharged acts perpetrated against victim over several years tended to show the defendant's preparation to steadily desensitize victim and to commit crimes charged); *Castine*, 141 N.H. at 303 (testimony described series of interdependent acts which, along with charged act, were part of a calculated design by defendant to "groom" the victim).

In response to the defendant's argument that this case resembles *State v. Melcher*, the majority finds that it more closely resembles *State v. Castine*. I agree with the majority that the facts in this case do not rise to the level of "grooming" that we found to constitute a common plan in *Castine. Id.* at 303-04. I cannot, however, agree with the majority's belief that, here, a common plan existed as illustrated by "a clear progression in the level of abuse." To do so would lead to the conclusion that a common

plan existed whenever a second incident involved a more serious assault than the first.

In *Castine*, we determined that the existence of a plan could be objectively determined by "the *calculated* progression of each stage of abuse." *Id.* at 304 (emphasis added). I fail to see a calculated progression of each stage of abuse in this case. Instead, the rapid escalation in the level of sexual abuse from the breast touching incident to the occurrence of digital penetration and oral sex appears to be far more abrupt and indicative of two disparate incidents than a clear and calculated progression in the mind of the defendant. The aggravated felonious sexual assault was neither intertwined with nor mutually dependent upon the felonious sexual assault.

Finally, the majority holds:

> [I]t is reasonable to conclude that the acts in this case were mutually dependent, because the occurrence of the final assaults hinged upon the success of the earlier incidents. Had the victim reported the breast touching or leg touching to anyone, the defendant would not have had the opportunity to commit the final assaults.

In my view, merely because the victim failed to report the prior acts does not mean that the acts were mutually dependent upon each other. Under this rationale, a "common plan" would exist whenever a victim failed to report an earlier event involving the same defendant. Viewed objectively, a victim's silence cannot bind a defendant's acts together into a common plan. In addition, the defendant may very well have had the opportunity to commit the final assaults even if the victim had reported the earlier incidents. It is mere speculation to say that the victim would have precluded such opportunity by reporting the incidents to "anyone." Only if the victim had reported the earlier incident to law enforcement authorities might we be so authoritative.

Viewed objectively, I cannot conclude that it was reasonable for the trial court to find that the offenses here formed a common plan. Although the defendant's prior conduct shows that he seized opportunities to assault the victim as they arose, the single incident of touching the victim's breast, without more, does not show that he had in mind "an overarching scheme" involving aggravated felonious sexual assault by digital penetration and oral sex—a scheme of which "each of the prior acts was but a part." *See Melcher*, 140 N.H. at 829. As such, I respectfully dissent from that portion of the majority opinion.