Carroll
No. 2003-622

THE STATE OF NEW HAMPSHIRE

v.

VINCENT SCHONARTH

Argued: February 17, 2005
Opinion Issued: September 2, 2005

*Kelly A. Ayotte*, attorney general (*Karen E. Huntress*, assistant attorney general, on the brief and orally), for the State.

*Christopher M. Johnson*, chief appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, Vincent Schonarth, appeals his convictions on seventeen counts of theft by deception. *See* RSA 637:4 (1996). On appeal, he contends that the Trial Court (*T. Nadeau*, J.) erred in: (1) consolidating the seventeen indictments for trial; (2) denying his motions to dismiss and for directed verdict; and (3) allowing a trial deposition of the victim prior to trial. We affirm.

The record supports the following facts. The defendant first met the victim, Denley Emerson, in 1996 when the defendant contacted him to inquire about renting property that Emerson owned. Emerson advised the defendant that he did not want to rent the property but wanted to sell it. When the defendant said that he had no money, Emerson agreed to finance the property for five years. They signed a contract for sale of the property for $77,000 on November 12, 1996. In 1999, the defendant advised Emerson that he had obtained a mortgage. When the purported loan did not close, the defendant advised Emerson that the mortgage company had been bought by Providian Bank and that Providian would give him the mortgage. Between 1996 and 2002, neither the defendant nor his wife filed a mortgage application with Providian.

Despite not having a pending application, the defendant continued to represent to Emerson that he had filed an application and reported on its status. In the following years, the defendant asked Emerson to lend him money to satisfy requirements allegedly imposed by Providian to obtain the loan. He also requested loans for the purchase price and closing costs for a piece of property contiguous to the one he was to purchase from Emerson, for court costs and fines, for repair expenses to the house, to pay debts to avoid going to jail, to pay a bond premium and employment security, and for utility and business-related expenses. Each of these loans was in some way allegedly related to enabling the defendant to secure the mortgage for the purchase of Emerson's property.

Although the defendant told Emerson that he would repay him with the proceeds of the mortgage, he neither sought a mortgage nor repaid the loans. The defendant also did not use the loan proceeds for purposes related to the purchase of the property.

In 2002, the defendant advised Emerson that Providian would not be financing his purchase of the property. He also told Emerson that he had formed a corporation with his wife to buy radio stations in the Lakes Region. He then solicited and obtained funds from Emerson for

investment in the corporation and for related purposes. The corporation did not exist.

In 2002, the State charged the defendant with seventeen counts of theft by deception. *See* RSA 637:4. In the indictments, the State alleged that, pursuant to a scheme or course of conduct, the defendant obtained or exercised control over varying amounts of funds belonging to Emerson by deception with a purpose to deprive him of the funds.

In March 2003, the State moved to consolidate the seventeen indictments, citing our decision in *State v. Ramos*, 149 N.H. 118 (2003). The defendant objected, arguing that each of the allegations was separate and distinct and that joinder would allow the State to introduce evidence that would be inadmissible if the charges were tried separately. The trial court granted the motion, finding that the acts constituted a common plan for purposes of joinder.

*I. Consolidation of Charges*

On appeal, the defendant first argues that the trial court erred in consolidating the seventeen charges for trial. Absent an unsustainable exercise of discretion, we will affirm a trial court's decision to sever or consolidate charges. *State v. McIntyre*, 151 N.H. 465, 466 (2004). To establish that a trial court's decision was unsustainable, the defendant must demonstrate that the ruling was clearly untenable or unreasonable to the prejudice of his case. *Id.*

A defendant has an absolute right to severance of unrelated offenses. *Ramos*, 149 N.H. at 128. Unrelated offenses are those that are not related. *Id.* Related offenses are those that are based upon the same conduct, a single criminal episode or a common plan. *Id.* In *State v. McIntyre*, 151 N.H. at 466-67, we adopted the definition of "plan" under New Hampshire Rule of Evidence 404(b) for purposes of the common plan relatedness test for joinder.

The defendant argues that under *McIntyre*, the trial court erred in joining the charges. We disagree. Viewed objectively, the defendant's actions demonstrated a prior design that included the charged acts as part of its consummation. *See State v. Michaud*, 150 N.H. 359, 361 (2003). The charges all involved the same elderly victim; all were based upon the defendant's efforts to defraud the victim of his property through increasingly grandiose schemes connected to the defendant's alleged desire to repay his debt to the victim. Accordingly, we find no error in the trial court's ruling.

## II. Sufficiency of Evidence of Theft by Deception

The defendant next argues that the State failed to present sufficient evidence that he committed theft by deception. To prevail in an appeal challenging the sufficiency of the evidence, the defendant bears the burden of proving that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt. *State v. Flynn*, 151 N.H. 378, 382 (2004). In reviewing the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation. *Id.*

"A person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof." RSA 637:4, I (1996). The defendant concedes that viewing the evidence in the light most favorable to the State, the jury could have found that he made false statements, that the victim gave him money and that the victim believed at least some of his statements. He argues, however, that the State failed to prove the victim's transfers of property were the consequence of the defendant's false statements and therefore that the defendant exercised control over the property as a result of deception. In support, he offers that the victim continued to retain legal ownership of the land that the defendant occupied, that the value of the land had increased due to improvements made by the defendant and that the victim "relied at least as much on his knowledge of his legal rights and of the land's value, as on [the defendant's] increasingly implausible false statements." We disagree with both the defendant's interpretation of the evidence and his legal conclusion.

We note that much of the victim's testimony cited by the defendant is taken out of context. Moreover, the jury was free to accept or reject his testimony in whole or in part. *See State v. Giles*, 140 N.H. 714, 718 (1996). The victim testified that he provided money to the defendant "based upon what he said," that he "believed him very thoroughly for several years," and that he would not have entered notes in his checkbook that he believed to be inaccurate. In response to the State's question, "Would you have loaned [the defendant] all this money . . . if you knew that he had never applied for a mortgage with the Providian Bank," the victim replied, "Of course not." That the victim retained ownership in land that may have increased in value due at least in part to improvements made by the defendant does not alter our conclusion that the evidence supported the jury's finding that the defendant obtained substantial monies from the victim by deception.

### III. Trial Deposition of Victim

Finally, the defendant argues that the trial court erred in permitting the State to take the trial deposition of the victim. We review the trial court's ruling under an unsustainable exercise of discretion standard. *State v. Sargent*, 148 N.H. 571, 573 (2002).

RSA 517:13, II (1997) provides that the trial court may permit either party in a criminal case to take the deposition of any witness, other than the defendant, when the court finds by a preponderance of the evidence that the deposition is necessary:

> (a) To preserve the testimony of any witness who is unlikely to be available for trial due to illness, absence from the jurisdiction or reluctance to cooperate; or
> (b) To insure a fair trial, avoid surprise or for other good cause shown.

In granting the State's request to preserve the victim's testimony for trial, the trial court found that although the victim was in good health, he was eighty-three years old and had exceeded the life expectancy for males. The court noted the several delays that had occurred in scheduling the case for trial and found that good cause existed to ensure that the jury could hear the victim's testimony. The defendant argues that RSA 517:13, II(a) must be read separately from RSA 517:13, II(b) and that because the State failed to satisfy the specific criteria set forth in 517:13, II(a), the trial court erred by considering the same factors in finding good cause under RSA 517:13, II(b). Even if we assume that the defendant is correct in arguing that the two subsections of RSA 517:13, II must be read separately, we find no error in the trial court's ruling. While RSA 517:13, II(a) addresses illness, it does not specifically address death. The factors cited by the trial court satisfied the good cause standard set forth in RSA 517:13, II(b). Because the court's findings are supported by the record, we conclude that the trial court properly exercised its discretion in granting the State's request for a trial deposition.

*Affirmed.*

DUGGAN and GALWAY, JJ., concurred.