Carroll
No. 2005-040

## PETITION OF THE STATE OF NEW HAMPSHIRE
## (State v. San Giovanni)

Argued: October 3, 2006
Opinion Issued: January 17, 2007

*Kelly A. Ayotte*, attorney general (*Robert S. Carey* and *Karen A. Gorham*, assistant attorneys general, on the brief, and *Elizabeth A. Dunn*, assistant attorney general, orally), for the State.

*Theodore Lothstein*, assistant appellate defender, of Concord, on the brief and orally, for defendant Joseph San Giovanni.

DUGGAN, J. The State filed a petition for writ of certiorari, *see* SUP. CT. R. 11, challenging an order of the Superior Court (*O'Neill*, J.) denying its motion to join multiple offenses in a single trial against the defendants, Joseph San Giovanni and Farid Kim Tari. The State's petition concerns only the indictments pending against San Giovanni. We deny the petition.

The record supports the following facts. In 2002, San Giovanni filed an application with the New Hampshire Department of Health and Human Services (DHHS) for a residential or health care license to open St. Jude's Residence (St. Jude's) in Ossipee. According to the application, the primary mission of St. Jude's was "to provide therapeutic residential supports to individuals with special needs. The targeted population [was to] be individuals that have suffered an acquired brain injury." St. Jude's was to provide various services, including, among other things, assistance with: (1) personal care; (2) developing an appropriate wardrobe for all seasons; (3) maintaining personal space and common areas in an acceptable manner; and (4) accessing community resources.

Soon thereafter, the defendants opened St. Jude's, which they marketed as a drug and alcohol treatment facility. One brochure described St. Jude's as a "Residential Inpatient Recovery Center" that "offer[ed] inpatient care services to individuals suffering from addiction, and in need of our assistance, to help them reach their goal of recovery." According to another brochure, the services offered at St. Jude's included vocational

training, substance abuse recovery and "the opportunity to learn, practice and generalize skills across a variety of functional settings."

In May 2004, both defendants were charged by indictment with fifteen counts of theft by deception. One of the indictments against San Giovanni alleges that:

> [P]ursuant to a scheme or course of conduct, and acting in concert with and aided by Farid Kim Tari, Joseph San Giovanni obtained or exercised control over property valued at more than $1,000 belonging to Robert Reczek by deception and with the purpose to deprive Robert Reczek of these funds.
>
> San Giovanni created or reinforced the impression, which was false and which he did not believe to be true, that the St. Jude's Residence in Ossipee, New Hampshire, was a drug and alcohol treatment facility that would provide such treatment to Mr. Reczek's son. As a result of this impression, San Giovanni obtained approximately $18,670.00 from Mr. Reczek, with a purpose to deprive Mr. Reczek of those funds.

The fifteen indictments are identical, except for the names of the victims and the amounts of money paid either by the victims or their families. The amounts of money range from $4,500 to $45,000. Each indictment also alleges a different time period, although all of the alleged offenses occurred during a sixteen-month period between December 2002 and April 2004.

The State filed motions to join both defendants as well as all of the offenses for trial. In support of its motions to join the offenses for trial, the State argued that they were based upon a common plan under *State v. Ramos*, 149 N.H. 118 (2003). The State also argued that the offenses were "not so numerous or complex that a jury [would] be unable to distinguish the evidence and apply the law intelligently." Both defendants objected, arguing that the offenses were unrelated, and that joining them would be unfairly prejudicial.

The superior court heard argument on the motions and subsequently issued an order denying the State's motions to join offenses for trial, but granting the State's motions to join the defendants for trial. With respect to the motions to join offenses, the court concluded that:

> While each of the defendants' charged offenses are, when viewed in retrospect, a cohesive plan, the State has not presented evidence that satisfies the *Ramos*/ABA standards. Specifically, the State has not shown that the defendants' alleged defrauding of each of the individual victims was "intertwined with" or

"mutually dependent" on the other victims. The defendants could have committed their alleged conduct as to one victim, but not to another, and still succeeded as to the first. As such, the defendants['] alleged acts are not a "plan" for purposes of consolidations. Therefore, the offenses are unrelated and the defendants have an absolute right to have them severed for trial.

(Citations omitted.) The State then filed this petition for writ of certiorari challenging the superior court's ruling.

 Certiorari is an extraordinary remedy that is not granted as a matter of right, but rather at the discretion of the court. *Petition of State of N.H. (State v. Theodosopoulos)*, 153 N.H. 318, 319 (2006); *see* SUP. CT. R. 11. We exercise our power to grant the writ sparingly and only where to do otherwise would result in substantial injustice. *Petition of State of N.H.*, 153 N.H. at 319. Certiorari review is limited to whether the trial court acted illegally with respect to jurisdiction, authority or observance of the law, or unsustainably exercised its discretion or acted arbitrarily, unreasonably, or capriciously. *Id.* at 319-20.

The State argues that the superior court's conclusion that the offenses were not related was error, and relies upon several factual allegations to support its position that the defendants had a common plan to defraud the residents named in the indictments. In addition, the State asserts that the superior court's decision is at odds with the legislature's intent to aggregate theft offenses committed pursuant to a scheme or course of conduct under RSA 637:2, V(a) (1996). It also contends that joinder is appropriate because the jury would be able to distinguish the evidence pertaining to each offense and apply the law intelligently.

In response, San Giovanni contends that the superior court correctly determined that the State failed to establish that the charges constituted a common plan. He points out that the State's arguments as to why the charges were mutually dependent—and therefore formed a common plan—were unsupported by any factual basis. Further, San Giovanni asserts, as an alternative ground for affirming the superior court's decision, that severance was appropriate in this case in order to promote a fair determination of his guilt or innocence.

We will uphold the superior court's decision not to join charges in this case unless we conclude that the decision constitutes an unsustainable exercise of discretion. *State v. Abram*, 153 N.H. 619, 623 (2006). To show that the superior court's decision is error, the State must show that the ruling was clearly untenable or unreasonable to the prejudice of its case. *Id.*

■■■ In *State v. Ramos*, we adopted the ABA standards for joinder and severance of criminal offenses, holding that "any two or more offenses committed by the same defendant may be joined for trial, upon the application of the prosecuting attorney or the defense." *Ramos*, 149 N.H. at 128. We further explained that:

> Whenever two or more unrelated offenses have been joined for trial, the prosecuting attorney or the defendant shall have a right to severance of them. "Unrelated" offenses are those that are not "related." "Related" offenses are those that are based upon the same conduct, upon a single criminal episode, or upon a common plan.

*Id.* (citations omitted).

■■■ For the purposes of the relatedness test outlined above, we recently adopted the definition of "common plan" as set forth in New Hampshire Rule of Evidence 404(b). *State v. McIntyre*, 151 N.H. 465, 466-67 (2004). In *McIntyre* we stated:

> The distinguishing characteristic of a common plan under Rule 404(b) is the existence of a true plan in the defendant's mind which includes the charged crimes as stages in the plan's execution. That a sequence of acts resembles a design when examined in retrospect is not enough; the prior conduct must be intertwined with what follows, such that the charged acts are mutually dependent.

*Id.* at 467 (citations omitted).

The State argues that the offenses are mutually dependent for two reasons: first, without the money from the earlier thefts, the defendants could not have committed the later thefts; second, the offenses are interconnected because if the earlier victims had reported the defendants to law enforcement, the later thefts would not have occurred.

Both of these arguments rely upon the same legal theory; namely, that the charges are mutually dependent because the success of the later-occurring crimes depends upon the success of the earlier crimes. In two recent sexual assault cases, we found joinder to be proper relying upon this theory. *See Abram*, 153 N.H. at 625 (joinder appropriate where defendant's success on later offenses was dependent upon his having desensitized the victims by regularly subjecting them to severe acts of sexual abuse); *McIntyre*, 151 N.H. at 467 (occurrence of the later assaults hinged upon the success of the earlier incidents). The present case, however, is distinguishable from both *Abram* and *McIntyre* for several

reasons. Most significant among them is that both *Abram* and *McIntyre* involved repeated crimes perpetrated against the same victim or victims. Here, we have discrete offenses committed against multiple victims.

This case is also distinguishable from the facts of *State v. Schonarth*, 152 N.H. 560 (2005), where we upheld the consolidation of seventeen counts of theft by deception, all against the same elderly victim. *Id.* at 562. Although we did not expressly apply the theory articulated above in our decision, there is no question that in that case, the success of the later frauds depended upon the success of the earlier frauds, as all involved the same victim and were all "connected to the defendant's alleged desire to repay his debt to the victim." *Id.*

 Furthermore, the State has failed to present any facts to support its claims that the defendants could not have committed the later thefts without the money from the earlier thefts. From what we can glean from the sparse record, approximately eighty people resided at St. Jude's during the course of its operation. Of these eighty residents, only fifteen were named as victims in the indictments; at least sixty-five were not. On this record, it would be sheer speculation to conclude that the monetary proceeds from the earlier crimes made it possible to commit the later crimes. Presumably, the residents who were not named victims paid many thousands of dollars for the services provided by St. Jude's, just as the alleged victims did. The State has thus failed to allege a sufficient connection between the money paid by the earlier victims and the thefts committed against the later victims.

 Similarly, the State has failed to substantiate its claim that the later thefts were made possible because the victims of the earlier thefts did not report the defendants to law enforcement officials. Standing alone, the State's argument casts too wide a net to justify finding offenses mutually dependent and therefore capable of joinder. From the record, it is impossible to discern why the victims of the earlier thefts did not complain at an earlier time to the authorities. The State has provided no factual basis linking the victims' silence to the defendants' conduct. Moreover, we note that in cases involving multiple offenses committed by a single perpetrator, if the victims report the offenses to law enforcement officials, early reporting will likely prevent subsequent offenses.

Next, the State argues that the defendants' marketing efforts created the opportunities for their thefts. It contends that the defendants attracted their victims to St. Jude's through the Internet, the Yellow Pages, and brochures.

■ Historically, we have required a substantial degree of interconnectedness before offenses may be joined as mutually dependent. *See Abram*, 153 N.H. at 627; *Schonarth*, 152 N.H. at 562; *McIntyre*, 151 N.H. at 467; *State v. Michaud*, 150 N.H. 359, 362 (2003). The examples of marketing proffered by the State are all targeted at the general public, and not at specific individuals. While the defendants' marketing efforts may have created opportunities for the defendants to commit the indicted offenses, the State has failed to show how these efforts contribute to a finding that the offenses at issue here are mutually dependent and thus constitute a common plan.

The State next argues that the fact that the defendants deposited the residents' money into business bank accounts supports finding that the indicted offenses were part of a common plan. In its brief, the State argues that:

> A business that receives money from customers needs a bank account. The forethought required to open bank accounts shows that the defendants envisioned many victims. Thus, the deposits of the victims' money into these bank accounts prove that these offenses were based upon a common plan.

■ As with the previous argument, the State has neglected to show how depositing the resident's money into business bank accounts supports finding that these particular offenses were part of a common plan. The superior court could reasonably have found that the actions described by the State—without more—at most establish a pattern or systematic course of conduct, which is not enough to prove the existence of a common plan. *See State v. Whittaker*, 138 N.H. 524, 528 (1994) (discussing the requirements for a common plan under Rule 404(b)).

Finally, the State asserts that the superior court's decision is at odds with the legislature's intent to aggregate theft offenses committed pursuant to a scheme or course of conduct under RSA 637:2, V(a) (1996). This argument was never raised during the proceedings in superior court. Consequently, it is not preserved for our review, and we decline to address it. *See Gulf Ins. Co. v. AMSCO*, 153 N.H. 28, 40-41 (2005) (citing *Broughton v. Proulx*, 152 N.H. 549, 552 (2005)).

■ Based upon the foregoing, we conclude that the superior court did not unsustainably exercise its discretion by ruling that the charged

offenses were unrelated and that joinder is inappropriate. In light of this result, we need not reach the remainder of the parties' arguments.

*Petition denied.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.