Merrimack
No. 2004-502

THE STATE OF NEW HAMPSHIRE

v.

SCOTT ABRAM

Argued: February 22, 2006
Opinion Issued: June 13, 2006

*Kelly A. Ayotte*, attorney general (*Ann M. Rice*, associate attorney general, on the brief and orally), for the State.

*Paul Garrity*, of Londonderry, on the brief and orally, for the defendant.

DALIANIS, J. The defendant, Scott Abram, was convicted by a jury in Superior Court (*McGuire*, J.) of twenty-one counts of aggravated felonious sexual assault of his step-children, A.A. and C.A., RSA 632-A:2 (1996 & Supp. 2005), four counts of endangering the welfare of a child, RSA 639:3 (1996), and one count of indecent exposure and lewdness, RSA 645:1

(Supp. 2005). He appeals, challenging the trial court's failure to sever the charges for trial and to admit certain evidence. We affirm in part, reverse in part, and remand.

## I. Background

The jury reasonably could have found the following facts. In 1997, the defendant married a woman who had three children, A.A., C.A. and K.A. The defendant and his wife had two children together, M.T. and J.T. In November 2000, the family moved to Concord, at which time A.A. and C.A. were eleven and nine years old, respectively.

Shortly after the move to Concord, the defendant assaulted A.A. in his bedroom on a crib mattress. He subjected her to sexual intercourse and digital penetration and forced her to perform fellatio. On numerous occasions throughout the 2001-2002 school year, the defendant subjected C.A. to anal penetration and forced him to engage in mutual acts of fellatio. On different occasions throughout the same period of time, the defendant made A.A. stay home from school as a "punishment," subjected her to sexual intercourse and cunnilingus, and demanded that she perform fellatio.

Specifically, on or about January 1, 2002, the defendant and his wife had a party at their house. Late in the evening, the defendant called C.A. into his bedroom, subjected him to anal penetration and forced him to engage in fellatio.

Later that month, RE/MAX Realty in Concord hired the defendant to clean its office on Wednesday evenings and Sundays. A.A. assisted him in cleaning the facility. On one occasion, the defendant forced A.A. into one of the empty cubicles in the office, sat her on the desk, and instructed her to touch her vagina and breasts with her hand. He then demanded, "f--- me," and when she refused, he made her perform fellatio.

During the summer of 2002, the defendant sexually assaulted A.A. in the pool in their backyard. At the time, the defendant, A.A. and J.T. were the only family members at home. They were playing in the pool when the defendant told J.T. to leave the pool and play in the yard. At that point, the defendant pinned A.A. against the wall of the pool, removed her bathing suit bottom, and subjected her to sexual intercourse. He then masturbated in front of her.

In early September 2002, A.A. stayed home to baby-sit for K.A. while the rest of the family, including the defendant, attended a wedding. K.A. melted a tile on the bathroom floor with an iron. When A.A. told the defendant about the damage, he yelled at her and then coerced her into engaging in sexual intercourse to avoid punishment.

At another point in September 2002, the sexual abuse escalated. A.A. and C.A. had been arguing and, as a punishment, the defendant made them kneel in a corner of his bedroom. He berated them with obscene and vulgar comments, and coerced them onto the bed under the guise of ending the punishment more quickly. He then ordered C.A. to lock the front door. While C.A. was absent from the bedroom, the defendant said, "f--- me," to A.A., and then forced her to engage in sexual intercourse with him. When C.A. returned, the defendant ordered him to undress, which C.A. did hesitantly. The defendant then ordered A.A. to alternate between performing fellatio on him and C.A. The children refused, but the defendant continued to verbally harass and intimidate them until they finally complied. The defendant then forced the children to engage in sexual intercourse with each other and ordered C.A. to perform cunnilingus on A.A. At some point, the defendant ordered C.A. to leave the room. After he left, the defendant again forced A.A. to engage in sexual intercourse with him and to perform fellatio.

On October 31, 2002, the defendant ordered A.A. to stay home from school to baby-sit for J.A. The defendant told J.A. to go upstairs, and coerced A.A. into smoking marijuana. He then forced A.A. to watch a pornographic show on television and ordered her to remove her clothes, after which he licked her breasts and subjected her to cunnilingus. At that point, the defendant thought he saw a car pull into their driveway, so he told A.A. to get dressed and go upstairs. When he realized that no one had arrived, he ordered her back downstairs and onto the couch where he engaged in sexual intercourse and forced her to perform fellatio.

The next day, the defendant kept C.A. home from school as a "punishment." After forcing C.A. to stand in the corner for a period of time, he coerced C.A. into smoking marijuana with him. The defendant then subjected C.A. to anal penetration on the couch, until C.A. told the defendant that "it hurt" and left the room. Later that day, the defendant demanded that C.A. come into his bedroom and C.A. complied out of fear. The defendant again subjected C.A. to anal penetration and demanded that he engage in mutual acts of fellatio.

On November 4, 2002, both victims revealed to the defendant's wife that the defendant had been sexually abusing them over a significant period of time. At that time, A.A. was thirteen years old and C.A. was eleven years old. The defendant was subsequently arrested and indicted on multiple charges of aggravated felonious sexual assault and related offenses, arising from the abuse he inflicted between November 2000 and November 2002.

Prior to the jury trial, the defendant moved to sever the charges involving only A.A. from the charges involving only C.A., and to further

sever the charges arising from the mutual acts that occurred in September 2002. The trial court denied the motion, finding that the acts fell within the "common plan" rule for joinder. The trial court also granted the State's motion *in limine*, precluding the admission of evidence concerning the victims' allegations that the defendant had sexually abused their younger brothers, K.A. and M.T. The jury convicted the defendant of twenty-one counts of aggravated felonious sexual assault, four counts of endangering the welfare of a child, and one count of indecent exposure and lewdness. The defendant appealed.

On appeal, the defendant argues that the trial court erred by: (1) denying his motion to sever the charged offenses; and (2) granting the State's motion *in limine* to preclude the cross-examination of the victims, or the admission of extrinsic evidence, concerning the victims' allegations that the defendant had sexually abused K.A. and M.T.

## II. Joinder

We first review whether the trial court properly denied the defendant's motion to sever the charges for trial. We will uphold the trial court's decision not to sever the charges unless we conclude that the decision constitutes an unsustainable exercise of discretion. *State v. McIntyre*, 151 N.H. 465, 466 (2004). To show that the trial court's decision is unsustainable, the defendant must demonstrate that the ruling was clearly untenable or unreasonable to the prejudice of this case. *Id.*

### A. Relatedness

Prior to trial, the defendant filed a motion to sever the pending charges. He requested three trials: one for the charges involving only A.A., one for the charges involving only C.A., and one for the charges stemming from the incident in September 2002 during which the defendant assaulted A.A. and forced the children to engage in sexual acts with each other. The defendant argued that the offenses underlying the three sets of charges were "unrelated," so he was entitled to severance as a matter of right under *State v. Ramos*, 149 N.H. 118 (2003).

In *Ramos*, we adopted the ABA standards for joinder and severance of criminal offenses, holding that "any two or more offenses committed by the same defendant may be joined for trial, upon the application of the prosecuting attorney or the defense." *Id.* at 128. We further explained, however, that:

> Whenever two or more unrelated offenses have been joined for trial, the prosecuting attorney or the defendant shall have a right to severance of them. "Unrelated" offenses are those that are not

> "related." "Related" offenses are those that are based upon the same conduct, upon a single criminal episode, or upon a common plan.

*Id.* (citations omitted).

The State argued below that all charges should be joined for trial as all charged offenses were based upon a "common plan." At that time, we had not defined "common plan" for purposes of the relatedness test. At the urging of the State, the trial court relied upon case law from Vermont, *see State v. LaBounty*, 716 A.2d 1 (Vt. 1998); *State v. Johnson*, 612 A.2d 1114 (Vt. 1992), to find all charges "related" because, like the facts underlying the Vermont cases, the defendant assaulted the children in the same manner, at the same location, and used his position of authority to effectuate the assaults.

■ Subsequent to the defendant's conviction, we adopted, for the purposes of the relatedness test, the definition of "common plan" under New Hampshire Rule of Evidence 404(b). *State v. McIntyre*, 151 N.H. at 466-67. We stated:

> The distinguishing characteristic of a common plan under Rule 404(b) is the existence of a true plan in the defendant's mind which includes the charged crimes as stages in the plan's execution. That a sequence of acts resembles a design when examined in retrospect is not enough; the prior conduct must be intertwined with what follows, such that the charged acts are mutually dependent.

*Id.* at 467 (citations omitted).

In *McIntyre*, we held that the trial court properly joined a felonious sexual assault charge with three counts of aggravated felonious sexual assault. *Id.* at 468. The victim, who was eleven at the time of the assaults, had testified that the defendant had touched her breast twice over her objection. *Id.* at 466. Shortly thereafter, the defendant had touched the victim on her bare leg during a car trip. *Id.* One or two weeks later, the defendant had entered the room where the victim was sleeping, partially disrobed her, digitally penetrated her, performed cunnilingus on her, and forced her to perform fellatio on him. *Id.* We held that it was reasonable to conclude that the acts were mutually dependent, because the occurrence of the final assaults hinged upon the success of the earlier incidents. *Id.* at 467. We concluded that the charged offenses illustrated "a clear progression in the level of abuse, allowing a reasonable person to make an objective finding of a common plan." *Id.* at 468.

In adopting the Rule 404(b) definition of "common plan," we relied primarily upon *State v. Castine*, 141 N.H. 300 (1996). *McIntyre*, 151 N.H. at 146-48. In *Castine*, we held that the trial court properly admitted testimony of prior uncharged assaults on the victim under the "plan" exception to New Hampshire Rule of Evidence 404(b). *Castine*, 141 N.H. at 303-04. The victim had testified at trial that, prior to the charged acts for felonious sexual assault and aggravated felonious sexual assault, the defendant began showing her pictures in pornographic magazines, and eventually began to take her hand and have her fondle his penis while showing her the pictures. *Id.* at 302. The defendant proceeded over time to show the victim pornographic movies. *Id.* The victim testified that the pornographic material amounted to a "how-to-guide" for an escalating series of assaults that culminated with weekly demands for fellatio. *Id.* at 303. We held that the challenged testimony described a series of interdependent acts, which, along with the charged acts, were "part of a calculated design by the defendant to 'groom' the victim." *Id.* As such, we held that the trial court properly admitted the testimony under the "plan" exception to Rule 404(b). *Id.*

The State concedes that the trial court applied an incorrect standard in determining relatedness, as the trial court did not have the benefit of our opinion in *McIntyre*. It argues, however, that the trial court, nevertheless, reached the correct result as the charges were related as a common plan under the standard set forth in *McIntyre*. Specifically, the State argues that the defendant possessed a plan to force the children to engage in sexual acts with each other for his gratification. It furthers argues that the September 2002 incident, in which the defendant coerced the children into engaging in sexual acts with each other, was the result of years of effort on his part. The defendant does not rebut these arguments, nor does he attempt to distinguish the instant facts from those in *McIntyre* or *Castine*. Instead, he argues that there was no showing of a "common plan" as the assaults on A.A. did not depend upon the success of the assaults on C.A., or vice versa, and only two child endangerment charges, arising from the September 2002 incident, involved allegations by both victims.

We agree with the State, in part, that certain charges were "related" as stages in the execution of a common plan, and, thus, properly joined for trial. Soon after the family moved to Concord in November 2000, the defendant assaulted A.A., subjecting her to sexual intercourse and digital penetration, and forcing her to perform fellatio. The defendant assaulted both victims repeatedly throughout the 2001-2002 school year, insisting that they individually remain home from school as a "punishment." He subjected C.A. to anal penetration and demanded mutual fellatio, and he

subjected A.A. to sexual intercourse and cunnilingus and he forced her to perform fellatio.

In January 2002, during a party at their home, the defendant subjected C.A. to anal penetration and forced him to engage in fellatio. At some point shortly thereafter, the defendant took A.A. into an empty cubicle at the RE/MAX Realty office, directed her to touch her vagina and breasts, said "f--- me" and forced her to perform fellatio. During the summer of 2002, the defendant sexually assaulted A.A. in the pool in their backyard. In early September 2002, the defendant coerced A.A. into participating in sexual intercourse to avoid punishment.

These acts of repetitive sexual abuse and exploitation, over a period of years, culminated in the September 2002 incident, when the defendant forced the victims to engage in sexual acts with each other for his gratification. His success was dependent upon his having desensitized the children to engaging in sex by regularly subjecting them to severe acts of sexual abuse. He was, thus, met with minimal resistance when he forced the children to perform sexual acts with each other while he observed and then participated.

The State acknowledges that the "common plan" applies only to the criminal charges prior to and including the child endangerment charges from the September 2002 incident, and would, thus, not apply to the sexual assaults of A.A. that occurred on that date, but subsequent to the mutual acts. It argues, however, that all charges arising from the September 2002 incident were related as they constituted a single criminal episode, *see Ramos*, 149 N.H. at 128, and thus were properly joined. We agree. The defendant does not challenge on appeal the trial court's secondary finding that severance was unnecessary to "achieve a fair determination of the defendant's guilt or innocence," *id.*, because the jury would be able to distinguish the evidence and apply the law intelligently to each offense. Accordingly, we hold that the trial court did not commit an unsustainable exercise of discretion by joining the charges that occurred prior to, and including the charges arising from, the September 2002 incident, when the defendant assaulted A.A. and forced the children to engage in sexual acts with each other.

The trial court also joined for trial, however, three charges of aggravated felonious sexual assault of A.A. during the time period from September 10, 2001, through October 24, 2002; three charges of aggravated felonious sexual assault of A.A. that occurred on or about October 31, 2002; and three charges of aggravated felonious sexual assault of C.A. that occurred on or about November 1, 2002. Insofar as these charges occurred, or could have occurred, subsequent to September 30,

2002 (the last date covered by the indictments for the September 2002 incident), we conclude that these charges could not have been part of the defendant's plan to groom the children to engage in sexual acts with each other for his gratification.

In the alternative, the State argues that all charges were "related" because they were otherwise "inextricably intertwined." Specifically, the State references the similar accusations and recantations by the children in 1999, the fact that the children lived in the same house and were abused in the same manner, and that "all the same witnesses were necessary to prove all charges." We agree with the defendant that the State misunderstands the relevance of offenses being "intertwined." "Inextricably intertwined" is not a separate ground for establishing "relatedness" in this context, but is merely a component of the "common plan" analysis. *McIntyre*, 151 N.H. at 467 (for underlying criminal offenses to be construed as part of a "common plan," the "prior conduct must be *intertwined* with what follows, such that the charged acts are mutually dependent" (emphasis added)). Accordingly, the State has not established the "relatedness" of the charged offenses that occurred, or could have occurred, subsequent to the September 2002 incident.

Finally, we take this opportunity to revisit the definition of "relatedness" set forth in *Ramos*. While we there adopted the ABA standards for joinder and severance of criminal offenses and thus defined "related" offenses as those that are "based upon the same conduct, upon a single criminal episode, or upon a common plan," *Ramos*, 149 N.H. at 128, we did not foreclose expansion of that definition.

Under our current definition of "relatedness," a defendant, charged with multiple acts of sexual assault involving the *same* victim, would have an absolute right to sever each charge for trial if those charges did not arise from the same transaction, constitute the same act, or form part of a "common plan" as narrowly defined in *McIntyre*. The current definition of "relatedness" could, thus, entitle a defendant to numerous trials for charges arising from the sexual assault of the *same* victim over a period of many years, if the individual acts of abuse, each severe in its own right, did not constitute a "common plan." Although we believe that *Ramos* was correctly decided, we are concerned, nonetheless, about the trauma inherent in subjecting a victim of multiple sexual assaults to multiple trials. We are also troubled by the potential dissipation of judicial resources in requiring multiple trials under such circumstances. However, the court should not adopt "new standards for joinder in criminal trials [for] an issue that is not squarely before the court," and "the adoption of a new rule of criminal procedure should be accomplished through

rulemaking," *see* SUP. CT. R. 51(A)(1)(b). *Ramos*, 149 N.H. at 128-29 (Dalianis, J., dissenting).

*B. Harmless Error*

■ We now examine whether it was harmless error for the trial court to also join for trial those charged offenses that occurred, or could have occurred, subsequent to the September 2002 incident; specifically, the charges relating to the sexual abuse of A.A. that occurred over the time period from September 10, 2001, through October 24, 2002, and again on October 31, 2002, and the sexual abuse of C.A. that occurred on November 1, 2002. Misjoinder of criminal offenses is subject to harmless error analysis. *State v. Mason*, 150 N.H. 53, 62 (2003).

■ It is well settled that an error is harmless only if it is determined, beyond a reasonable doubt, that the verdict was not affected by the error. *Id.* The State bears the burden of proving that an error was harmless. *Id.* An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight and if the inadmissible evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. *Id.*

In *Mason*, we held that the erroneous joinder of sexual assault charges with second degree assault and witness tampering charges was not harmless. *Id.* We found that the evidence was not overwhelming as to any particular offense and the case was largely dependent upon witness credibility. *Id.* The State also conceded that it was unlikely that the evidence relating to the sexual assault charges would be admissible at a trial on the other charges. *Id.* We recognized a "high potential for prejudice in permitting a jury to hear evidence of sexual assaults against a child when that evidence is otherwise not relevant to other charges." *Id.*

We, therefore, analyze whether, beyond a reasonable doubt, the verdict on the offenses that occurred prior to the September 2002 incident (related offenses) was not affected by the evidence concerning the charged offenses that occurred, or could have occurred, subsequent to the September 2002 incident (unrelated offenses), and/or whether the verdict on the unrelated offenses was not affected by the evidence concerning the related offenses. *Cf. United States v. Bruck*, 152 F.3d 40, 44 (1st Cir. 1998) (analyzing whether insurance fraud and arson-related evidence caused the jury to convict on misjoined bank fraud charges, and/or whether the bank fraud evidence caused the jury to convict on insurance fraud and arson-related charges).

Here, the State contends that even if the trial court had severed the charges in accordance with the defendant's request, each of the juries would have heard some evidence of abuse of both victims. In addition, the State argues that the evidence relating to each charge was not complex, the testimony was easily referable to the individual charges, and the evidence for all charges was elicited through the same witnesses.

The defendant counters that the State cannot meet its burden because the evidence was not of an overwhelming nature as to any individual charge. Specifically, he argues that there was no corroborating physical evidence, no admission to any criminal wrongdoing by the defendant, and the case was largely dependent upon the victims' credibility. The defendant also contends that the State cannot prove, beyond a reasonable doubt, that the verdicts returned by the jury were untainted by the significant number of unrelated charges that were admitted into evidence, as the verdict does not demonstrate that the jury considered each charge separately.

With respect to the related offenses, the jury properly heard extensive evidence concerning at least twelve counts of aggravated felonious sexual assault, four counts of endangering the welfare of a child (which involved forcing the victims to have sexual intercourse with each other), and one count of indecent exposure and lewdness, all arising from abuse inflicted between November 2000 and September 30, 2002. Under these circumstances, evidence that this pattern continued for approximately one more month until the victims reported the abuse was merely cumulative in its effect, and, thus, did not have the same "high potential for prejudice" that was present in *Mason*. *Mason*, 150 N.H. at 62. Furthermore, given that there was little that was factually unique about the assaults underlying the unrelated offenses that would have substantially enhanced the victims' credibility, it is unlikely that a juror's determination of the victims' credibility would have changed based upon whether the juror heard evidence concerning only the events between November 2000 and September 30, 2002, or all of the events between November 2000 and November 1, 2002. We, thus, conclude, beyond a reasonable doubt, that the verdict concerning the related offenses was not affected by the error of misjoinder.

We reach a different conclusion, however, with respect to whether the verdict on the unrelated offenses was affected by the evidence underlying the related offenses. In considering the unrelated offenses, the jury improperly heard extensive evidence of at least seventeen offenses arising from abuse inflicted between November 2000 and September 30, 2002. The

State does not argue that such evidence would have been otherwise admissible, absent a showing of relatedness.

■ We acknowledge the "high potential for prejudice in permitting a jury to hear evidence of sexual assaults against a child when that evidence is otherwise not relevant to other charges," *id.*, especially where such evidence was substantial in nature, as under the instant facts. We, thus, cannot conclude, beyond a reasonable doubt, that the verdict concerning the unrelated offenses was not affected by the error of misjoinder. Accordingly, we reverse the convictions on indictments nos. 03-S-140, 03-S-141, 03-S-142, 03-S-149, 03-S-150, 03-S-151, 03-S-1070, 03-S-1074 and 03-S-1075.

*III. Exclusion of evidence*

Next, the defendant argues that his rights under Part I, Article 15 of the New Hampshire Constitution and the Fifth, Sixth and Fourteenth Amendments of the United States Constitution were violated when the trial court granted the State's motion *in limine*. By granting the motion, the trial court prohibited the cross-examination of the victims, and the admission of extrinsic evidence, concerning allegations made by the victims in November 2002 that the defendant had also sexually abused their younger brothers, K.A. and M.T.

The trial court granted the State's motion *in limine* on the grounds that the defendant failed to prove that the prior allegations of sexual assault were "demonstrably false" under *State v. White*, 145 N.H. 544, 548 (2000) ("demonstrably false" means "clearly and convincingly untrue"), *cert. denied*, 533 U.S. 932 (2001), *petition for habeas corpus denied by White v. Coplan*, 296 F. Supp. 2d 46 (D.N.H. 2003), *vacated on fed'l constitutional grounds*, 399 F.3d 18 (1st Cir.), *cert. denied*, 126 S. Ct. 478 (2005). Specifically, the trial court found that, among other things: (1) A.A.'s minor temporal inconsistency in reporting the timeline of sexual abuse did not clearly indicate that the allegations were false; (2) the physical examinations of K.A. and M.T., which neither proved nor negated sexual abuse, did not clearly demonstrate that the allegations were false; and (3) although K.A. and M.T. initially denied the allegations of sexual assault, their persistent complaints of anal pain and M.T.'s subsequent reports of sexual abuse undermined the defendant's claim that the allegations were false. The State argues that the trial court employed the correct standard in excluding such evidence.

We first address the defendant's claim that the trial court's exclusion of such evidence violated his due process and confrontation rights under the State Constitution, *State v. Ball*, 124 N.H. 226, 231 (1986), and cite federal

opinions for guidance only. *Id.* at 232-33. In *State v. Ellsworth*, we held for the first time that extrinsic evidence of a prior false allegation of sexual assault by a victim in a sexual assault case could be admitted under New Hampshire Rule of Evidence 608(b) "only where the allegations are similar, and the proffered evidence is highly probative of the material issue of the complainant's motives." *State v. Ellsworth*, 142 N.H. 710, 719 (1998). We held that such limitations on the admission of extrinsic evidence did not violate the defendant's rights to due process or confrontation under the State or Federal Constitutions. *Id.* at 719-20.

In *White*, the defendant was charged with felonious sexual assault of two victims who were sisters, and he sought to introduce evidence that the victims had made prior false allegations of sexual assault against three other individuals. *White*, 145 N.H. at 547. Specifically, the defendant proffered, among other things, the jury verdict of acquittal arising from the victims' allegation of sexual assault against the first individual; reports from a police investigation, arising from the victims' allegation of sexual assault against the second individual, that was eventually terminated; and testimony from two witnesses who alleged that the older victim had admitted that several of the prior allegations were false. *Id.* at 548-50. The defendant contended that the evidence concerning the prior allegations was admissible to impeach the victims' credibility under Rule 608(b). *Id.* at 547.

We affirmed the trial court's exclusion of both cross-examination of the victims and extrinsic evidence concerning the prior allegations, holding that "a defendant may introduce a victim's prior allegations of sexual assault by showing that the prior allegations were demonstrably false," which we interpreted to mean "clearly and convincingly untrue." *Id.* at 548. We held that although the defendant had proved the falsity of the accusations to a "reasonable probability," he failed to meet the higher, requisite standard of "demonstrably false." *Id.* at 551. We further held that the limitation on cross-examination did not violate the defendant's State and Federal constitutional rights to due process and confrontation. *Id.* at 553-54.

 The defendant does not argue on appeal that the "demonstrably false" standard should not apply to this case, as he did below. The defendant also does not explicitly argue that the victims' allegations concerning K.A. and M.T. were "demonstrably false," but, rather, argues that the allegations were false, "at the least, to a reasonable probability." Consistent with our holding in *White*, we hold that the defendant was required to demonstrate clearly and convincingly that the victims' prior allegations of sexual assault concerning K.A. and M.T. were false.

A trial court has broad discretion to determine the scope of cross-examination or the admissibility of extrinsic evidence, and we will not upset its ruling absent an unsustainable exercise of discretion. *State v. Weeks*, 140 N.H. 463, 467 (1995); *see also State v. Dewitt*, 143 N.H. 24, 26-27 (1998); *cf. State v. Lambert*, 147 N.H. 295, 296 (2001) (explaining unsustainable exercise of discretion standard). To prevail under such a standard, a defendant must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case. *State v. Alexander*, 143 N.H. 216, 221 (1998).

As addressed above, the trial court applied the correct legal standard. In rendering its decision, the trial court articulated why each proffer by the defendant in this context could not support a finding that the victims' allegations concerning K.A. and M.T. were "clearly and convincingly untrue." Accordingly, we hold that the trial court did not unsustainably exercise its discretion by granting the State's motion *in limine* to exclude such evidence.

We now review the defendant's claims under the Federal Constitution. There is no United States Supreme Court decision that is on all fours with the case at bar. *See Coplan*, 399 F.3d at 25. Upon habeas review, however, the First Circuit vacated the district court's agreement with our ruling in *White*. *Coplan*, 399 F.3d at 27. It found, in a general sense, no federal constitutional error with the "demonstrably false" standard applied by this court. *Id.* at 26. It noted, however, that a Confrontation Clause objection may apply to "extreme cases" where a state restriction is "patently unreasonable." *Id.* The First Circuit concluded that the "extreme case" of *White*, 145 N.H. 544, was "quite unusual" in light of the strong similarity between the past and present allegations, the finding of "falsity to a reasonable probability," and an actual jury acquittal on charges brought against one individual; thus, the defendant was entitled to explore the prior allegations on cross-examination of the victims. *Coplan*, 399 F.3d at 26-27. It limited its holding to cross-examination, stating that it was "not endorsing any open-ended constitutional right to offer extrinsic evidence ... [as] [s]uch an excursion requires more witnesses and documents, and so greater risks of confusion and delay . . . ." *Id.* at 26.

The defendant contends that this case presents similar facts to those in *White* and should be reversed on federal constitutional grounds for the same reasons. *See id.* at 26-27. We disagree. The trial court found that, among other things, the medical examinations of K.A. and M.T. neither proved nor negated sexual abuse, M.T. later recanted his initial denial of sexual abuse, and the temporal inconsistencies by A.A. did not clearly indicate that the allegations were false. Unlike the defendant in *White*, the defendant here did not proffer testimony from any witness claiming first-

hand knowledge that the victims' allegations concerning K.A. and M.T. were false. Nor did the defendant proffer any evidence to suggest that the State failed to pursue the allegations concerning K.A. and M.T. due to doubt about their veracity.

The defendant also points to the similarity between the underlying charges concerning C.A. and the allegations concerning K.A. and M.T. While the prior allegations and underlying charges in *White* concerned similar instances of abuse involving the *same* victims, the prior allegations here concern different victims. As a result, the admission of evidence concerning K.A. and M.T. would produce significant confusion of the issues, likely resulting in a "trial within a trial," and potentially causing substantial delay. *See Weeks*, 140 N.H. at 467.

The defendant has not asserted the type of "extreme" and "unusual" facts that were present in *White*. We, thus, hold that the application of the "demonstrably false" requirement to the particular facts before us did not violate the defendant's due process and confrontation rights under the Federal Constitution. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution in holding that the trial court did not unsustainably exercise its discretion in granting the State's motion *in limine*.

*Affirmed in part; reversed in part; and remanded.*

DUGGAN, GALWAY and HICKS, JJ., concurred.