# United States Court of Appeals
## For the First Circuit

No. 09-1820

SCOTT ABRAM,

Plaintiff, Appellant,

v.

RICHARD GERRY, Warden, New Hampshire State Prison,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. LaPlante, U.S. District Judge]

Before

Torruella, Lipez and Howard,
Circuit Judges.

Paul J. Garrity for appellant.
Ann M. Rice, Associate Attorney General, with whom Michael
A. Delaney, Attorney General, was on brief, for appellee.

February 24, 2012

**HOWARD**, **Circuit Judge**.  Following a jury trial in New Hampshire Superior Court, Scott Abram was convicted of twenty-one counts of aggravated felonious sexual assault against his two stepchildren, four counts of endangering the welfare of a child and one count of indecent exposure and lewdness.

After exhausting his direct appeals, Abram petitioned for a writ of habeas corpus in the United States District Court for the District of New Hampshire pursuant to 28 U.S.C. § 2254.  Abram argued that the state trial court violated his rights under the Sixth Amendment Confrontation Clause by prohibiting him from cross-examining his stepchildren regarding their accusations that he had also abused their younger siblings.  The district court denied the petition.  We affirm.

**I.**

When a federal court reviews a state court conviction on habeas review, "any state court factual findings are presumed to be correct."  Clements v. Clarke, 592 F.3d 45, 47 (1st Cir. 2010).  Accordingly, we briefly sketch the relevant facts underlying Abram's conviction and the accusations Abram sought to introduce at trial, drawing liberally from the district court's decision in Abram v. Warden, No. 07-cv-272-JL, 2009 U.S. Dist. LEXIS 43141 (D.N.H. May 20, 2009), which in turn draws from the New Hampshire Supreme Court's decision in State v. Abram, 903 A.2d 1042 (N.H. 2006).

In 1997, Abram married Evelyn Towne, who had three children: a daughter, A.A., and two sons, C.A. and K.A. Abram and Towne then had two children together, M.T. and J.T. On November 4, 2002, A.A. and C.A. told their mother that Abram had been sexually abusing them for a long time.[1] The children reported that Abram sexually assaulted them and forced them to engage in sexual conduct with each other. Both claimed that Abram had anally penetrated them, and they also accused him of anally penetrating their younger brothers, K.A. and M.T.[2] When questioned by investigators, however, the two younger brothers denied that the alleged abuse occurred.[3]

Prior to trial, the government filed a motion in limine to preclude the defendant from eliciting any testimony regarding the older siblings' accusations that Abram abused K.A. and M.T. The state anticipated that Abram would raise these accusations -- and K.A.'s and M.T.'s denials -- on cross-examination in order to impeach A.A.'s and C.A.'s credibility. The government argued that

_____

[1] A.A. and C.A. made similar allegations in 1999. After the children had given formal statements describing the abuse, however, their mother called the police to say that the children had recanted.

[2] The assaults and abuse are described in greater detail in Abram, 903 A.2d at 1044.

[3] M.T. told investigators that he had been touched on his penis and buttocks once, and that he had seen his father masturbate on multiple occasions. Neither boy indicated that he had been anally penetrated, however.

-3-

the court should not permit any questioning about the accusations because Abram could not establish that the allegations were "demonstrably false." It relied on State v. Gordon, 770 A.2d 702 (N.H. 2001) and State v. White, 765 A.2d 156 (N.H. 2000) for the proposition that under New Hampshire law, the defendant could "introduce a victim's prior allegation of sexual assault for impeachment purposes by showing that such allegations were demonstrably false, which means clearly and convincingly untrue."[4]

In his written objection to the state's motion, Abram offered evidence that, he contended, proved the falsity of A.A. and C.A.'s allegations regarding their younger siblings. He emphasized that physical examinations of K.A. and M.T. in 2002 revealed no evidence of physical abuse, and that both K.A. and M.T. had repeatedly denied the sexual abuse in interviews with investigators. Abram also pointed out that A.A., in her 2002 statement to police, mentioned that she had observed Abram abusing

---

[4] The New Hampshire Supreme Court later revisited this standard in State v. Miller, 921 A.2d 942 (N.H. 2007). Miller overruled Gordon to the extent that Gordon construed White "to require a defendant to demonstrate clearly and convincingly that the prior allegations were false before being permitted to cross-examine the victim about them under [New Hampshire Rule of Evidence] 608(b)." Id. at 947. The court concluded that state trial courts have wide discretion to allow or prohibit the cross-examination of a sexual assault victim concerning a prior allegedly false allegation of sexual abuse. Id. The "demonstrably false" standard merely states when courts are constitutionally required to allow such questioning." Id.

-4-

M.T. "three years ago," and yet, in 1999, she had denied ever seeing Abram abuse M.T.

The trial court found that Abram failed to prove that the accusations were demonstrably false and granted the state's motion. The court noted that K.A.'s and M.T.'s physical examinations did not prove or disprove whether the abuse had occurred.[5] It also observed that although K.A. and M.T. initially denied the allegations of the assault, there was evidence that undermined the defendant's claim that these allegations were false. The court cited medical records from 2002, in which the children's mother reported that C.A., K.A. and M.T. frequently complained of anal pain. After K.A. and M.T. were removed from the family home in 2002, a family member discovered K.A. masturbating, and both boys told family members that Abram had shown them the activity. M.T. told police that Abram had frequently touched his "penis and bum." The trial court further found that A.A.'s "minor temporal inconsistency" in reporting the time line of sexual abuse did not clearly indicate that the allegations were false, particularly given her young age at the time she was interviewed.

The jury convicted Abram, and the trial court sentenced him to a term of 50 to 100 years' imprisonment.

---

[5] Both exams were normal, but the doctor who examined both K.A. and M.T. stated in her November 13, 2002 report that the fact that the exams were within normal limits "is to be expected given the type of abuse reported." The normal exams, she added, "neither prov[ed] nor negat[ed] sexual abuse."

On direct appeal, the New Hampshire Supreme Court considered and rejected Abram's claim that the trial court's exclusion of the allegations regarding K.A. and M.T. violated Abram's Sixth Amendment right to confront the witnesses against him. The court acknowledged that under our holding in White v. Coplan, 399 F.3d 18 (1st Cir. 2005), New Hampshire's application of the "demonstrably false" standard could violate the Confrontation Clause in certain "extreme cases" when its application was "patently unreasonable." Abram, 903 A.2d at 1053. Abram's was not an extreme case meriting reversal under White, the state court held, because Abram could not present similarly compelling evidence that the allegations at issue were false. It also concluded that there was a particularly high likelihood in Abram's case that the excluded evidence would result in a "trial within a trial," because the allegations involved children who were not victims in the case. Id.[6]

Abram renewed his Sixth Amendment claim in his federal habeas corpus petition. The district court denied Abram's petition on summary judgment, on the grounds that the New Hampshire Supreme Court's decision was neither contrary to nor an unreasonable

_____

[6] The New Hampshire Supreme Court reversed Abram's convictions on nine of the twenty-two counts of felonious sexual assault, holding that the trial court had improperly joined the charges against Abram in one proceeding. Abram, 903 A.2d at 1051. The trial court subsequently resentenced Abram to thirty to sixty years' imprisonment.

application of federal law under Supreme Court precedent, as interpreted by White. This appeal followed.

## II.

We review de novo the district court's denial of habeas relief. Clements, 592 F.3d at 51. The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, dictates our standard of review of the New Hampshire Supreme Court's disposition of Abram's direct appeal. Where, as here, the state court considered and rejected the petitioner's claim on the merits, we may grant habeas relief only if its adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Abram's claim invokes the first prong of this statute. He contends that he is entitled to habeas relief because his inability to cross-examine A.A. and C.A. about their allegations regarding K.A. and M.T. violated the Confrontation Clause. The state supreme court's determination that it did not, he avers, constituted an unreasonable application of clearly established federal law.

-7-

Under section 2254(d)(1), an unreasonable application of clearly established federal law occurs when the court either "identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular state prisoner's case or unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." John v. Russo, 561 F.3d 88, 96 (1st Cir. 2009).

We begin with the question of what constitutes "clearly established" federal law on the issue presented. "The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986). The Supreme Court has recognized the ability to cross-examine adverse witnesses as essential to that right. Id. at 678-79. The right is not absolute, however. Trial courts may place reasonable limits on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. at 679.

Abram relies primarily on our decision in White to argue that the exclusion of the allegations pertaining to K.A. and M.T. was an unreasonable application of clearly established federal

law.[7]  Although we agree that White articulates the relevant legal principles under which we evaluate Abram's claim, we conclude that the state supreme court's application of those principles was not unreasonable.

In White, the defendant was charged with assaulting the two young daughters of a friend while visiting their home.  399 F.3d at 20.  The girls were the only witnesses who testified about the alleged assaults, and the government's case hinged on their credibility.  Id. at 20-21.  At trial, White sought to cross-examine both girls about prior accusations of sexual assault that the girls had made against three other men.  A jury had acquitted one of the men of the charges; no formal charges were brought against the second; and the police never identified the third.  Id. White argued that the girls' prior accusations were similar to their accusations against him, and that evidence demonstrating the falsity of these prior accusations thus bore upon the girls' credibility and showed prior sexual knowledge.  Id. at 22.

The trial court prohibited all inquiry into the prior allegations, and the New Hampshire Supreme Court affirmed White's conviction.  Id.  The state supreme court found that White had

---

    [7] Although section 2254(d) refers specifically to federal law "as determined by the Supreme Court," we may also consider lower federal court decisions, which may state the clearly established federal law or assist in determining how a general standard applies to a particular set of facts.  Evans v. Thompson, 518 F.3d 1, 10 (1st Cir. 2008).

proven the falsity of the prior accusations to a "reasonable probability," but concluded that New Hampshire law required that the defendant prove the prior accusations were "demonstrably false" for them to be admitted, which the court equated with clear and convincing evidence. Id. The district court denied White's habeas petition.

On habeas review, we interpreted Supreme Court decisions to require "a balancing of interests depending on the circumstances of the case" in determining whether a defendant's Sixth Amendment Confrontation Clause rights had been violated. These interests included the importance of the evidence to an effective defense, the scope of the ban involved, and the strength vel non of state interests weighing against admission of the evidence. Id. at 24. Applying this test, we determined that although New Hampshire's "demonstrable falsity" standard was "generally defensible," id., White represented an "extreme case" in which application of this standard violated the Confrontation Clause. The facts that made the case extreme, we observed, were (1) the state supreme court's finding that the prior accusations were false to a reasonable probability; (2) the fact that the defendant had virtually no other way to defend himself; and (3) the similarity between the prior accusations and those made against White. Id. at 27.

We thus held in White that a defendant may have a Sixth Amendment right to cross-examine a witness regarding prior

-10-

allegations of sexual assault on a lesser showing than "demonstrable falsity," but only where multiple factors in combination weigh heavily in favor of allowing such questioning. It is significant that the accusations in White, while falling short of the New Hampshire standard, nonetheless were false to a high degree of likelihood, i.e., to a "reasonable probability." Such prior accusations will only be relevant to the victim's credibility if the jury concludes they are false. Given the potential harms from pursuing such an inquiry, including the emotional toll on the victim and confusion over what conduct is actually before the jury, it is appropriate to require the defendant to satisfy a high threshold regarding the likelihood of falsity. We nevertheless recognized in White that, in some circumstances, New Hampshire's particularly demanding requirement mayhave to give way to a defendant's Confrontation Clause rights.

None of the factors that prompted us to label White an "extreme case" is present here. First, unlike the defendant in White, Abram could not prove that the accusations concerning K.A. and M.T. were false to a "reasonable probability." On careful review, the New Hampshire Supreme Court found the evidence of falsity to be inconclusive at best, Abram, 903 A.2d at 1053, and

Abram has not challenged that finding under 28 U.S.C. § 2254(d)(2).[8]

Second, the exclusion of the evidence in this case did not deprive Abram of a defense as it did White. Abram sought to introduce the allegations in part to argue that the children were so desperate to escape his discipline that they sought to "scorch the earth" with incendiary allegations. Even without this testimony, however, he was able to introduce other evidence supporting his theory as to why the children had "invented" their allegations of abuse against him.

Third, whereas in White the prior allegations involved the same victims as those in the defendant's case, in Abram's case, the excluded evidence involved different victims who were not otherwise part of Abram's trial. The New Hampshire Supreme Court concluded that allowing Abram to raise the excluded evidence would be more likely to "produce confusion of the issues, likely resulting in a 'trial within a trial,' and potentially causing substantial delay." Abram, 903 A.2d at 1053-54. We think this conclusion was reasonable.

---

[8] Even if Abrams had raised this claim, to the extent that he challenged a factual finding he would have faced a heavy burden to show that the state court's determination was unreasonable. Under AEDPA, the federal habeas court must presume that the state court's factual findings were correct unless applicants rebut the presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Schrivo v. Landrigan, 550 U.S. 465, 473-74 (2007).

-12-

Abram acknowledges these distinctions but nevertheless contends that the state court misapplied White's three-factor balancing test. He argues that the importance of the testimony to the defense and the scope of the prohibition outweighed the strength of the state interests against admission. The testimony was particularly important to the defense, he claims, because the prosecutor's case hinged almost entirely on the credibility of A.A. and C.A. And he argues that the scope of the ban was absolute, in that the defense was not allowed to ask any questions about the allegations pertaining to K.A. and M.T.

Although the New Hampshire Supreme Court did not explicitly apply this balancing test to the facts in Abram's case, we may consider Abram's argument on habeas review in determining whether the state court has "unreasonably refuse[d] to extend a legal principle to a new context where it should apply." Fratta v. Quarterman, 536 F.3d 485, 505 (5th Cir. 2008); see also Hurtado v. Tucker, 245 F.3d 7, 20 (1st Cir. 2001)(observing that while the reasoning used by the state court is "pertinent," "[t]he ultimate question on habeas . . . is not how well reasoned the state court decision is, but whether the outcome is reasonable").

That said, under AEDPA, we may only consider whether, in applying these factors, the state court's determination -- that Abram's Confrontation Clause rights were not violated -- was unreasonable. We may not consider whether we would have reached

-13-

the same conclusion. Where, as here, the federal law in question sets forth general principles, state courts have considerable flexibility to exercise their judgment in reaching outcomes. See Yarborough v. Alvarado, 541 U.S. 652, 665 (2004)("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

With this in mind, we do not conclude that the state supreme court's conclusion was unreasonable. A.A. and C.A.'s allegations regarding the abuse of their younger siblings would have only undermined their credibility if those allegations were indeed false. See White, 399 F.3d at 24 ("Many jurors would regard a set of similar past charges. . . if shown to be false, as very potent proof in [the Petitioner's] favor.")(emphasis added); Quinn v. Haynes, 234 F.3d 837, 846 (4th Cir. 2000) ("A true allegation of another sexual assault is completely irrelevant to credibility. . . .").  As we observed above, the state supreme court found that the evidence neither proved nor disproved the falsity of the accusations regarding K.A. and M.T.  Given that finding, the state court did not unreasonably apply federal law by excluding this evidence.  We note that other circuits have failed to find Sixth Amendment violations on similar facts. See Cookson v. Schwartz, 556 F.3d 647, 654 (7th Cir. 2009) (rejecting habeas claim and distinguishing White, where the petitioner could not establish that the excluded sexual assault allegation was false to a "reasonable

-14-

probability"); Quinn, 234 F.3d at 847, 851 (rejecting habeas claim where the denials of the alleged perpetrators constituted the only evidence that the prior allegations were false); Boggs v. Collins, 226 F.3d 728, 735 (6th Cir. 2000)(rejecting habeas claim where the state trial court had found that the victim had never made the alleged prior accusations).[9]

It would also have been reasonable for the state court to find that the scope of the exclusion was not absolute, in that Abram was not prevented from pursuing his theory of the children's motive to fabricate. We so conclude based on our reading of Van Arsdall, the Supreme Court case from which White draws this factor of its three-part test, and the case on which Abram relies in asserting that the ban in his case was absolute.

_____

[9] In so holding, Boggs and Quinn each determined that the prior accusations constituted "general credibility" evidence rather than evidence suggesting the alleged victim's bias or a motive to lie, see Boggs, 226 F.3d at 739-740; Quinn, 234 F.3d at 845, and relied on Supreme Court language suggesting that "general credibility" evidence may be afforded less protection under the Confrontation Clause than evidence pointing to a specific bias or motive to lie on the part of the victim. See Davis v. Alaska, 415 U.S. 308, 316 (1974); id. at 321 (Stewart, J., concurring). Abram appears to imply that because he sought to introduce the excluded evidence to further support his theory of the children's bias, as well as to directly attack their credibility, the allegations are entitled to automatic and unconditional constitutional protection, regardless of the allegations' veracity. We do not read the Confrontation Clause case law to require this. Unlike this case, Davis and its progeny all involved "impeachment based upon credibility-impugning facts that were not in dispute." Quinn, 234 F.3d at 846.

-15-

In Van Arsdall, the defendant claimed that the state trial court had violated the Confrontation Clause by not allowing him to cross-examine a government witness in his murder trial about the undisputed fact that the witness had agreed to speak with the government about the murder in exchange for the dismissal of a drunk-driving charge against him. 475 U.S. at 676. After acknowledging that trial courts generally "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination," the Supreme Court held that the trial court's exclusion of this evidence constituted a constitutional violation because "the trial court prohibited all inquiry into the possibility that [the government witness] would be biased. . . ." Id. at 679.

It was reasonable for the New Hampshire Supreme Court to conclude that the Supreme Court's concern in Van Arsdall was that the defendant, if not permitted to cross-examine the witness about his agreement with the government, would be completely unable to explore the question of bias. Here, on the contrary, Abram retained the ability to cross-examine the witnesses about their possible incentives to fabricate the accusations of abuse. As the Supreme Court has often repeated, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to

-16-

whatever extent, the defense might wish." See, e.g., Delaware v. Fensterer, 474 U.S. 15, 20 (1985)(per curiam).

Finally, Abram argues that White left open the possibility that courts might find other cases "extreme" such that application of New Hampshire's "demonstrably false" standard would be patently unreasonable, even if the facts were distinguishable from those of White itself. He urges us to find that the application of the "demonstrably false" standard would be unreasonable here, both because the prior accusations in question were unusual -- in that they involved the defendant's alleged abuse of other children, rather than the child victims' allegations against other potential defendants -- and because both the lack of physical evidence of the abuse and K.A. and M.T.'s denials suggested the falsity of the claims.

In contending that his case is "extreme," however, Abram ignores the important ways in which, as we have explained, this case differs from White. The mere possibility of falsity that he raises is significantly different from the finding in White of a "reasonable probability" that the earlier allegations were false. Unlike White, Abram was not entirely deprived of his opportunity to defend. Moreover, the state court in this case supportably saw an added risk of jury confusion where the excluded evidence concerned different victims. In sum, the circumstances here, taken together,

fall short of establishing an "extreme" case meriting the grant of a writ of habeas corpus.

Having considered all of Abram's arguments, we conclude that the state supreme court's decision was not an unreasonable application of clearly established federal law.

### III.

For the reasons set forth above, we **<u>affirm</u>** the judgment of the district court.

**-- Dissenting Opinion Follows --**

**TORRUELLA**, <u>Circuit Judge</u> **(Dissenting).** The specter of an adult, particularly one in a position of trust such as a stepfather, sexually abusing his minor stepchildren is enough to incense even the most equanimous person and to wish upon such a miscreant the full retributive weight of the law. But there lies the catch: <u>the law</u>. We live in an ordered society, and to keep it ordered for the benefit of the whole of society, we are bound to apply the law, not just to do what we believe the abominable person charged may justly deserve.[10]

Our Constitution, as our "supreme law,"[11] establishes the minimum rights to which a person accused of a crime is entitled in defense of his life and liberty. There are virtually no exceptions to the attachment of these rights by reason of the nature of the crime charged, even for the most heinous of accusations. Such is the situation with which we must wrestle in this appeal. Succinctly put, we are required to determine whether the New Hampshire courts unreasonably applied clearly established federal

---

[10] As Sir Thomas More stated, "[G]ive the devil benefit of law." Robert Bolt, <u>A Man for All Seasons: A Play in Two Acts</u> 66 (First Vintage Int'l ed., Vintage Books 1990) (1960).

[11] U.S. Const. art. VI, cl. 2. ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby . . . .").

law designed to protect Abram's right to cross-examine his accusers.

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986). An essential element of this right, as recognized by the Supreme Court, is the right to cross-examine adverse witnesses. Id. at 678-79. However, as the Court has stated, this is not an absolute right: trial courts may place reasonable limits on cross-examination "based on concerns about, among others things, harassment, prejudice, confusion of the issues, the witness[es]' safety, or interrogation that is repetitive or only marginally relevant." Id. at 679. Our inquiry should therefore be directed at determining whether the New Hampshire trial court's restrictions on the petitioner's right to confront the witnesses against him are properly within these constitutional parameters.

Because I cannot in good conscience find that the trial court's ruling in this case reasonably applied established federal law when considering the petitioner's Sixth Amendment rights and because the court engaged in no perceptible balancing of the considerations required under White, I am forced to conclude that the petitioner in this case is entitled to the habeas relief he seeks. See White v. Coplan, 399 F.3d 18, 24 (1st Cir. 2005)

-20-

(finding that prohibiting defendant from cross-examining accusers regarding prior accusations of sexual assault was an "unreasonable application" of "clearly established Federal law" and noting that Supreme Court precedent requires a balancing of interests).

The facts are straightforward and are not in dispute. Petitioner Scott Abram married Evelyn Towne in 1997 and settled in Manchester, New Hampshire. Towne brought three children from a prior marriage to this union, A.A., C.A., and K.A. Thereafter, Abram and Towne procreated two children of their own, J.T. and M.T.

Sometime in 1999, while the family still resided in Manchester, A.A. and C.A. made allegations to their mother that Abram was sexually abusing them. Within two weeks of their giving formal statements to the Manchester police describing the alleged abuse, however, the mother called the police to say that the children -- first C.A. and then A.A. -- had recanted. The authorities proceeded no further with these matters.

In A.A.'s 1999 statement to the Manchester police, she claimed that she had "heard [M.T.] and [K.A.] molested in the bathroom[, and] that she had seen the defendant do it one time to [K.A.] in 1999." Notwithstanding these allegations, both M.T. and K.A. consistently denied that Abram penetrated their anuses. Furthermore, a physical examination of these children by physicians acting at the request of the authorities failed to reveal any evidence of sexual abuse, although the doctor opined that a

-21-

negative result of this examination did not necessarily rule out the possibility of sexual abuse having taken place. The record shows that M.T. and K.A. were three and four years of age, respectively, when the 1999 incident allegedly took place.

In 2002, the family moved to Concord, New Hampshire. In November 2002, when A.A. was thirteen and C.A. was eleven, they renewed their accusations against Abram, claiming long-term sexual abuse. They alleged that Abram had sexually assaulted them by anally penetrating them. A.A. also accused Abram of engaging in vaginal intercourse with her and of forcing her to engage in sexual conduct with C.A. During the investigation that ensued, A.A., in a written statement to investigator Paula Fanjoy, renewed her 1999 accusations against Abram, including the related claims "that she saw her brothers [M.T. and K.A.] in the bathroom with [Abram] and saw him place his penis in their butts." A.A. then stated that "she saw blood on [M.T.'s] diapers three years ago," in 1999. Medical records from 2002 showed that the children's mother reported that C.A., K.A., and M.T. frequently complained of anal pain.

A.A.'s and C.A.'s allegations resulted in Abram's arrest and indictment on charges of aggravated sexual assault and related offenses covering the time period between November 2000 and November 2002. The government again did not pursue any charges based on the renewed 1999 allegations.

Before trial, the government filed a motion in limine seeking to preclude Abram from eliciting any testimony from A.A. and C.A. regarding their claims that Abram had abused K.A. and M.T. in 1999. In doing so, the government anticipated that, for the purpose of impeaching A.A.'s and C.A.'s credibility before the jury during his cross-examination, Abram would raise the fact that A.A. and C.A. had made these accusations, notwithstanding that K.A. and M.T. had denied that Abram sodomized them. It was the government's position at this hearing that the court should not permit any questions on this subject because Abram could not establish the falsity of A.A.'s and C.A.'s allegations to the requisite level under New Hampshire law.

New Hampshire law requires a showing that prior false allegations of sexual abuse are "demonstrably false" before an alleged victim of sexual assault can be cross-examined about prior allegedly false sexual abuse. See State v. Gordon, 770 A.2d 702 (N.H. 2001) (overruled on other grounds by State v. Miller, 921 A.2d 942, 947 (N.H. 2007) (overruling Gordon to the extent it "require[d] a defendant to demonstrate clearly and convincingly that the prior allegations were false before being permitted to cross-examine the victim about them under Rule 608(b)," but affirming that there is no constitutional requirement to permit this cross-examination unless the prior allegations were proved to be demonstrably false)). The New Hampshire Supreme Court has

interpreted "demonstrably false" to require the defendant to prove that the allegations were "clearly and convincingly untrue." State v. White, 765 A.2d 156, 159 (N.H. 2000).

The trial court granted the government's motion and enjoined Abram from asking any questions on cross-examination about the allegations and withdrawals concerning K.A. and M.T. The trial court in essence found that Abram's allegations did not meet the New Hampshire "demonstrably false" test because (1) the medical examinations of K.A. and M.T. neither proved nor negated sexual abuse, (2) M.T. later recanted his initial denial of sexual abuse, and (3) the temporal inconsistencies in A.A.'s expected testimony did not clearly indicate that the allegations were false.

The case proceeded to trial before a jury, which found Abram guilty of twenty-two counts of felonious sexual assault, four counts of endangering the welfare of a child, and one count of indecent exposure and lewdness. The trial court sentenced Abram to 50 to 100 years of imprisonment. For reasons not relevant to this appeal, the New Hampshire Supreme Court reduced this sentence to thirty to sixty years of imprisonment when it vacated nine of the twenty-seven total counts for which Abram was convicted. The New Hampshire Supreme Court affirmed the trial court's ruling prohibiting any cross-examination on the issue of A.A.'s and C.A.'s 1999 allegations regarding K.A. and M.T. See State v. Abram, 903 A.2d 1042 (N.H. 2006). A petition for habeas corpus in the U.S.

-24-

District Court for the District of New Hampshire alleging violation of Abram's Sixth Amendment rights fared no better, and this appeal ensued thereafter.

This case presents a quintessential credibility case. There was a dearth of physical evidence to prove the government's case against Abram. The majority of the evidence against Abram consisted of the testimony of the obviously compelling witnesses he allegedly abused, in which they related evidence which, if true, would incense even the most detached and cold-blooded juror. The accusers' testimony was pitted against Abram's denial that those incidents took place. The case, and Abram's freedom, turned entirely on the word of the alleged victims against Abram. It was thus imperative that the defendant be allowed to test the reliability of the government's witnesses in any reasonable manner. "The importance of the right of cross-examination is heightened when the testimony of the witness in question is the only evidence directly linking the defendant to the crime." Searcy v. Jaimet, 332 F.3d 1081, 1093 (7th Cir. 2003) (Cudahy, C.J., dissenting) (citing Olden v. Kentucky, 488 U.S. 227, 233 (1988); Davis v. Alaska, 415 U.S. 308, 317-20 (1974)).

Abram sought to introduce evidence to show motive or bias which included the fact that A.A. and C.A. made prior allegations that Abram had abused their younger siblings, K.A. and M.T. (the "uncharged allegations"), that both K.A. and M.T. denied that Abram

abused them, and that Abram was never charged for this alleged abuse. Federal case law distinguishes between general attacks on a witness's credibility (evidence offered to support the inference that the witness has a tendency to lie) and attacks on credibility aimed at showing "possible biases, prejudices, or ulterior motives of the witness." Davis, 415 U.S. at 316. "[W]hile 'generally applicable evidentiary rules limit inquiry into specific instances of conduct through the use of extrinsic evidence and through cross-examination with respect to general credibility attacks, . . . no such limit applies to credibility attacks based upon motive or bias . . . .'" Redmond v. Kingston, 240 F.3d 590, 593 (7th Cir. 2001) (quoting Quinn v. Haynes, 234 F.3d 837, 845 (4th Cir. 2000)); White, 399 F.3d at 26 ("Evidence suggesting a motive to lie has long been regarded as powerful evidence undermining credibility, and its importance has been stressed in Supreme Court confrontation cases."). This case law does not imply that any time a defendant seeks to introduce evidence of prior false allegations to show the accuser's bias or motive, the allegations are entitled to unconditional constitutional protection, regardless of the allegations' veracity. The veracity of the allegations is relevant. In my opinion, in this case, Abram provided evidence of falsity to a reasonable probability.

The evidence regarding A.A.'s and C.A.'s 1999 accusations regarding their younger brothers would support the defense that the

-26-

children were motivated to make false allegations about Abram in order to get him out of the house and to get away from his discipline, and were in fact so motivated that they were willing to "scorch the earth" to get him out.  The uncharged allegations from 1999, if false, potentially show a pattern of false accusations against the same defendant.  As we stated in White:

> Many jurors would regard a set of similar past charges by [complainants], if shown to be false, as very potent proof in [the defendant's] favor.  This "if," of course, is the heart of the matter. . . . [T]he risk is presented of a substantial excursion by both sides into proof that the witness is or is not telling the truth as to a prior episode . . . .  Yet cross-examination and extrinsic proof are two different issues.  The ability to ask a witness about discrediting prior events--always assuming a good faith basis for the question--is worth a great deal.  Imagine if [the defendant] had been allowed to question the [victims] about their prior accusations, establish their similarity, and inquire into supposed recantations. The jury, hearing the questions and listening to the replies, might have gained a great deal even if neither side sought or was permitted to go further.

399 F.3d at 24-25.  Here, a pattern is not only suggestive of an underlying motive, it is even more so than what we, in White, considered suggestive because it shows the accusers' potential animus against the defendant.  See 399 F.3d at 24 ("If the prior accusations [regarding other men] were false, it suggests a pattern and a pattern suggests an underlying motive (although without pinpointing its precise character).").

-27-

Further, the evidence of the uncharged allegations regarding the younger brothers is not cumulative of other evidence relevant to the accusers' credibility. Although the evidence that A.A. and C.A. recanted their 1999 allegations regarding the alleged abuse they themselves endured supports the inference that the children have a propensity to lie, it does not show the extent to which they were willing to go in their attempt to get Abram out of the house or escape his presence. The children's extraneous efforts in making false allegations regarding their younger brothers are relevant to show their animus toward the defendant. Abram was entitled to a higher level of constitutional protection because the evidence of the uncharged allegations was essential to show A.A. and C.A.'s potential motive and animus toward the defendant. See Redmond, 240 F.3d at 593 (noting that credibility attacks based upon motive or bias are not subject to the limitations of generally applicable evidentiary rules). Given that the trial court failed to consider the argument that the evidence was relevant to the children's bias or motive, I find that it unreasonably applied federal law.

A.A.'s and C.A.'s 1999 uncharged allegations regarding their younger brothers are especially relevant and should have been allowed as a subject of controlled cross-examination. But the trial court went even further, and barred any cross-examination on this crucial subject. The facts here, like the facts in White,

-28-

present an extreme case where the trial court should have extended the protections of the Sixth Amendment regardless of the petitioner's ability to meet New Hampshire's "demonstrably false" standard.[12]

First, the circumstances surrounding the uncharged allegations are similar in nature to A.A.'s and C.A.'s allegations against Abram in 2002. See White, 399 F.3d at 24 (concluding that the evidence was considerably more powerful than general credibility evidence where the past accusations bore a marked resemblance to the accusers' allegations against the defendant). Both the 1999 and 2002 allegations were made on the heels of an argument between A.A. and Abram, who was a strict disciplinarian, and during periods of time coextensive with the periods during which A.A. and C.A. claimed that Abrams engaged in their "long term sexual abuse." Further, they involved minor children of the same household, all of whom were under Abram's custody and control.

Second, there is a temporal proximity between the 1999 accusations and the 2002 accusations, during the latter of which A.A. renewed the previously recanted accusations she and C.A. made in 1999. If the children lied about the 1999 accusations, then it makes it more likely that they would lie again just a few years

---

[12] Although this Court has stated that a constitutional challenge to this standard would be an "uphill struggle," we have yet to address such a challenge. See Ellsworth v. Warden, 333 F.3d 1, 6 (1st Cir. 2003).

later.  Third, although the police knew about both the accusations in 1999 and the renewal of the same in 2002, no charges were filed against Abram regarding the 1999 allegations.  The failure to prosecute Abram for the 1999 allegations at a minimum raises the possibility that the government did not find them credible in view of the fact that the children recanted the allegations or that the government strategically considered that cross-examination on that point would damage A.A.'s and C.A.'s credibility.

Fourth, there was evidence that A.A. did not like being in the Abram household because Abram and her mother argued often (the 2002 charges resulted in A.A. and her brother being moved to live with relatives).  The fact that A.A. disliked being in the household is relevant to her possible motive for lying repeatedly about the accusations, as she could have either sought to remove Abram from the household or, in the alternative, get herself sent away.  Finally, the striking similarities between the various allegations in Abram's case and their importance to his defense provide us with facts that are at least as extreme as those we had in White.

The trial court's absolute ban, and the Supreme Court of New Hampshire's affirmation of this ban, is an unreasonable application of clearly established federal law.  A restriction on cross-examination, when appropriate,

> [c]alls for a balancing of interests depending on circumstances of the case.  Factors that the Supreme Court has deemed relevant are [1] the importance of the evidence to an effective defense, [2] the scope of the ban involved and [3] the strength _vel non_ of state interests weighing against admission of the evidence.

_White_, 399 F.3d at 24 (numbered brackets supplied).  Here, the court failed to consider the balancing required under _White_ and focused only on examining whether the facts in Abram's case were identical to those in _White_.  _See_ _State_ v. _Abram_, 903 A.2d at 1053-54.  In failing to balance the interests that _White_ and established federal law call for, the trial court unconstitutionally weighted the scales in favor of the government's interest and unreasonably applied established federal law.

I would reverse the district court's denial of relief.